SH

Renee A. Washington
567 Merrill Ave
Calumet City, IL 60409
708-567-3410
renee101@sbcglobal.net

1:22-cv-04401
Judge Thomas M. Durkin
Magistrate Judge Gabriel A. Fuentes
RANDOM

## IN THE UNITED STATES FEDERAL DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Renee A. Washington, an Individual. | Request For Jury Trial |
| Plaintiff, | Reserve The Right To Amend |
| V. | |
| JPMorgan Chase Bank, National Association, Ernest J Codilis, Codilis & Associates, P.C., MariClare O'Connor, Karen A. Yarbrough in her individual capacity as Cook County Clerk Recorder of Deeds, Iris Y. Martinez in her individual capacity as the Clerk of Circuit Court of Cook County, Timothy C. Evans in his individual capacity as Circuit Court of Cook County Chief Judge, Cook County, Edward N. Robles in his individual capacity as Associate Judge Chancery division of Circuit Court of Cook County, Lynn Weaver-Boyle in her individual capacity as the Circuit Judge Chancery Division of Circuit Court of Cook County, JPMorgan Chase Bank National Association, Grant Law LLC., Maurice Grant and Senija Grebovic Defendants. | CASE #  NOTICE OF REMOVAL |

**RECEIVED**

'AUG 18 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Record of and For Notice of Removal and 42 U.S. Code§ 1983 Complaint.

# Full Electronic Docket Search for Chancery, Domestic/Child Support, Civil and Law Searches

Print View (https://courtlink.lexisnexis.com/cookcounty/FindDock.aspx?NCase=19-CH-09659&SearchType=0&Database=3&case_no=&PLtype=1&sname=&CDate=)

Search Again



**Cook County
Clerk of the Circuit Court**
Electronic Docket Search
Chancery, Domestic/Child Support, Civil and Law Divisions

Case Information Summary for Case Number
2019-CH-09659

Filing Date: 08/21/2019

Division: Chancery Division

Ad Damnum: $0.00

Case Type: Owner Occupied Single-Family Home/Condo

District: First Municipal

Calendar: 63

## Party Information

**Plaintiff(s)**
JPMORGAN CHASE BANK, NATI

**Defendant(s)**
CHICAGO TITLE LAND TRUST
Cook County Recorder of De
NON RECORD CLAIMANTS
UNKNOWN OWNERS
WASHINGTON, RENEE

**Defendant Date of Service**

**Attorney(s)**
CODILIS ERNEST J JR
**Attorney(s)**
PRO SE
PRO SE
PRO SE
PRO SE
PRO SE

## Case Activity

Activity Date: 01/14/2020

Participant:

## Case Information Summary for Case Number
### 2019-CH-09659

Filing Date: 08/21/2019

Division: Chancery
Division

Ad Damnum: $0.00

Case Type: Owner
Occupied Single-Family
Home/Condo

District: First Municipal

Calendar: 63

### Party Information

| Plaintiff(s) | Attorney(s) |
| --- | --- |
| JPMORGAN CHASE BANK, NATI | CODILIS ERNEST J JR |

| Defendant(s) | Defendant Date of Service | Attorney(s) |
| --- | --- | --- |
| CHICAGO TITLE LAND TRUST | | PRO SE |
| Cook County Recorder of De | | PRO SE |
| NON RECORD CLAIMANTS | | PRO SE |
| UNKNOWN OWNERS | | PRO SE |
| WASHINGTON, RENEE | | PRO SE |

### Case Activity

Activity Date: 01/14/2020                                    Participant:

Default - Allowed -

Judge: HORAN, CECILIA A.

Activity Date: 01/14/2020          Participant: CHICAGO TITLE LAND TRUST

Default - Allowed -

Judge: HORAN, CECILIA A.

Activity Date: 01/14/2020          Participant: UNKNOWN OWNERS

Default - Allowed -

Judge: HORAN, CECILIA A.

Activity Date: 01/14/2020        Participant: NON RECORD CLAIMANTS

Default - Allowed -

Judge: HORAN, CECILIA A.

Activity Date: 01/14/2020        Participant: JPMORGAN CHASE BANK, NATI

Judgment Of Foreclosure Entered (Case Is Pending)

Judge: HORAN, CECILIA A.
Attorney: CODILIS ERNEST J JR

Activity Date: 01/17/2020        Participant: CODILIS ERNEST J JR

Notice Of Default Order Mailed - Fee Paid

Activity Date: 01/20/2020        Participant: CODILIS ERNEST J JR

Motion Scheduled (Motion Counter Only)

Date: 02/10/2020
Court Time: 0945

Activity Date: 01/21/2020        Participant: JPMORGAN CHASE BANK, NATI

Motion To Vacate Order

Attorney: CODILIS ERNEST J JR

Activity Date: 01/23/2020        Participant: JPMORGAN CHASE BANK, NATI

Notice Of Motion Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 02/10/2020        Participant:

Strike Or Vacate An Order - Allowed -

Judge: HORAN, CECILIA A.

Activity Date: 03/01/2022                                    Participant:

                        Emergency Motion Filed


Activity Date: 03/01/2022                                    Participant:

                        Emergency Motion Filed


Activity Date: 03/03/2022                                    Participant:

                        Affidavit Filed


Activity Date: 03/03/2022                                    Participant:

                        Affidavit Filed


Activity Date: 03/03/2022                                    Participant:

                        Amended Notice Filed


Activity Date: 03/03/2022                                    Participant:

                Memorandum In Support Of Motion Filed


Activity Date: 03/03/2022                                    Participant:

                Memorandum In Support Of Motion Filed


Activity Date: 03/03/2022                                    Participant:

                Memorandum In Support Of Motion Filed


Activity Date: 03/03/2022                                    Participant:

                Memorandum In Support Of Motion Filed

Activity Date: 03/03/2022                                          Participant:

Emergency Motion Filed


Activity Date: 03/09/2022                                          Participant:

Affidavit Filed


Activity Date: 03/09/2022                                          Participant:

Release Filed


Activity Date: 03/10/2022                                          Participant:

Notice Filed


Activity Date: 03/10/2022                                          Participant:

Substitution Of Attorney Filed


Activity Date: 03/17/2022                                          Participant:

Notice Of Filing Filed


Activity Date: 04/25/2022                                          Participant:

Notice Of Filing Filed


Activity Date: 04/25/2022                                          Participant:

Objections Filed


Activity Date: 04/25/2022                                          Participant:

Motion Filed

Activity Date: 04/25/2022                                    Participant:

Motion Filed

Activity Date: 04/25/2022                                    Participant:

Motion Filed

Activity Date: 04/25/2022                                    Participant:

Substitution Of Attorney Filed

Activity Date: 05/05/2022                                    Participant:

Exhibits Filed

Activity Date: 05/05/2022                                    Participant:

Exhibits Filed

Activity Date: 05/05/2022                                    Participant:

Exhibits Filed

Activity Date: 05/05/2022                                    Participant:

Exhibits Filed

Activity Date: 05/05/2022                                    Participant:

Exhibits Filed

Activity Date: 05/05/2022                                          Participant:

Exhibits Filed

Activity Date: 05/05/2022                                          Participant:

Motion Filed

Activity Date: 05/05/2022                                          Participant:

Motion Filed

Activity Date: 05/05/2022                                          Participant:

Motion Filed

Activity Date: 05/07/2021          Participant: JPMORGAN CHASE BANK, NATI

298 Petition Filed - Defendant/Respondent

Attorney: CODILIS ERNEST J JR

Activity Date: 05/10/2021          Participant: JPMORGAN CHASE BANK, NATI

Proof Of Service Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 05/14/2021                                          Participant:

Application To Sue Or Defend As A Poor Person: Respondent

Attorney: PRO SE

Activity Date: 05/14/2021          Participant: NON RECORD CLAIMANTS

298 Petition Filed - Defendant/Respondent

Attorney: PRO SE

Activity Date: 05/14/2021    Participant: NON RECORD CLAIMANTS

Waiver Filed

Attorney: PRO SE

Activity Date: 05/25/2022         Participant:

Notice Of Motion Filed

Activity Date: 05/25/2022         Participant:

Notice Of Motion Filed

Activity Date: 05/27/2022    Participant: JPMORGAN CHASE BANK, NATI

Strike From The Call - Allowed -

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 05/27/2022    Participant: JPMORGAN CHASE BANK, NATI

Set Briefing Schedule - Allowed -

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 05/27/2022    Participant: WASHINGTON, RENEE

Courts Motion This Case Is Taken Under Advisement

Judge: ROBLES, EDWARD N

Activity Date: 05/27/2022    Participant: JPMORGAN CHASE BANK, NATI

Withdrawal Of Attorney From Case - Continued -

Date: 06/09/2022
Court Time: 0200       Judge: ROBLES, EDWARD N
Court Room: 2801     Attorney: CODILIS ERNEST J JR

Activity Date: 06/06/2022         Participant:

Petition Filed

Activity Date: 06/06/2022                                    Participant:

Objections Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                    Participant:

Exhibits Filed

Activity Date: 06/08/2022                                          Participant:

Exhibits Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed


Activity Date: 06/08/2022                                          Participant:

Answer Filed

Activity Date: 06/08/2022                                    Participant:

Answer Filed


Activity Date: 06/08/2022                                    Participant:

Answer Filed


Activity Date: 06/15/2022                                    Participant:

Exhibits Filed


Activity Date: 06/15/2022                                    Participant:

Exhibits Filed


Activity Date: 06/15/2022                                    Participant:

Motion For Extension Of Time (Scr 323E) Filed


Activity Date: 06/15/2022                                    Participant:

Notice Of Filing Filed


Activity Date: 06/21/2022                                    Participant:

Exhibits Filed


Activity Date: 06/21/2022                                    Participant:

Exhibits Filed


Activity Date: 06/21/2022                                    Participant:

Motion For Extension Of Time (Scr 323E) Filed

Activity Date: 06/21/2022                                    Participant:

Notice Of Filing Filed

Activity Date: 06/21/2022              Participant: JPMORGAN CHASE BANK, NATI

Transferred To Presiding Judge

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 06/21/2022              Participant: JPMORGAN CHASE BANK, NATI

Recusal - Allowed

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 06/22/2022              Participant: JPMORGAN CHASE BANK, NATI

Assign To Judge Within Division

Judge: HALL, SOPHIA H
Attorney: CODILIS ERNEST J JR

Activity Date: 06/30/2022                                    Participant:

Exhibits Filed

Activity Date: 06/30/2022                                    Participant:

Exhibits Filed

Activity Date: 06/30/2022                                    Participant:

Notice Of Motion Filed

Activity Date: 06/30/2022                                                  Participant:

Motion Filed

Activity Date: 06/30/2022                                                  Participant:

Motion To Dismiss Filed

Activity Date: 07/08/2022                                                  Participant:

Notice Of Motion Filed

Activity Date: 07/08/2022                                                  Participant:

Substitution Of Attorney Filed

Activity Date: 07/12/2022                                                  Participant:

Affidavit In Support Of Motion Filed

Activity Date: 07/12/2022                                                  Participant:

Exhibits Filed

Activity Date: 07/12/2022                                                  Participant:

Exhibits Filed

Activity Date: 07/12/2022                                                  Participant:

Exhibits Filed

Activity Date: 07/12/2022                                                  Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed


Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022

Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Exhibits Filed

Activity Date: 07/12/2022                                    Participant:

Notice Of Motion Filed


Activity Date: 07/12/2022                                    Participant:

Motion Filed


Activity Date: 07/12/2022                                    Participant:

Motion Filed


Activity Date: 07/12/2022                                    Participant:

Motion Filed


Activity Date: 07/14/2022                                    Participant:

Exhibits Filed


Activity Date: 07/14/2022                                    Participant:

Exhibits Filed


Activity Date: 07/14/2022                                    Participant:

Exhibits Filed


Activity Date: 07/14/2022                                    Participant:

Exhibits Filed


Activity Date: 07/14/2022                                    Participant:

Exhibits Filed

Activity Date: 07/14/2022                                                   Participant:

Exhibits Filed


Activity Date: 07/14/2022                                                   Participant:

Exhibits Filed


Activity Date: 07/14/2022                                                   Participant:

Notice Of Motion Filed


Activity Date: 07/14/2022                                                   Participant:

Motion Filed


Activity Date: 07/15/2022                                                   Participant:

Notice Of Motion Filed


Activity Date: 07/15/2022                                                   Participant:

Motion Filed


Activity Date: 07/18/2022            Participant: JPMORGAN CHASE BANK, NATI

Motion To - Allowed -

Judge: WEAVER-BOYLE,
LYNN
Attorney: CODILIS ERNEST J JR


Activity Date: 07/18/2022            Participant: JPMORGAN CHASE BANK, NATI

Strike Or Withdraw Answer Or Appearance Or Both - Denied -

Judge: WEAVER-BOYLE,
LYNN

Attorney: CODILIS ERNEST J JR

Activity Date: 07/18/2022                                    Participant:

Dismiss/Strike/Withdraw Affirmative Defense - Denied

Activity Date: 08/02/2022          Participant: JPMORGAN CHASE BANK, NATI

Continuance - Allowed -

Judge: WEAVER-BOYLE,
LYNN
Attorney: CODILIS ERNEST J JR

Activity Date: 08/02/2022          Participant: JPMORGAN CHASE BANK, NATI

File Appearance Or Jury Demand, Answer Or Plead - Allowed -

Judge: WEAVER-BOYLE,
LYNN
Attorney: CODILIS ERNEST J JR

Activity Date: 08/02/2022          Participant: JPMORGAN CHASE BANK, NATI

Continued Generally - Allowed

Judge: WEAVER-BOYLE,
LYNN
Attorney: CODILIS ERNEST J JR

Activity Date: 08/02/2022                                    Participant:

Case Assigned to Zoom Hearing - Allowed

Activity Date: 08/03/2022                                    Participant:

Notice Of Motion Filed

Activity Date: 08/03/2022                                    Participant:

Emergency Motion Filed

Activity Date: 08/11/2022                                        Participant:

Exhibits Filed


Activity Date: 08/11/2022                                        Participant:

Motion For Extension Of Time (Scr 323E) Filed


Activity Date: 08/11/2022                                        Participant:

Notice Of Motion Filed


Activity Date: 08/15/2022                                        Participant:

Affidavit As To Military Service Filed


Activity Date: 08/15/2022                                        Participant:

Exhibits Filed


Activity Date: 08/15/2022                                        Participant:

Exhibits Filed


Activity Date: 08/15/2022                                        Participant:

Notice Of Motion Filed


Activity Date: 08/15/2022                                        Participant:

Motion Filed


Activity Date: 08/15/2022                                        Participant:

Motion Filed

Activity Date: 08/15/2022                                    Participant:

Motion Filed

Activity Date: 08/15/2022                                    Participant:

Motion To Dismiss Filed

Activity Date: 08/21/2019          Participant: JPMORGAN CHASE BANK, NATI

Owner Occupied Single Family Home Or Condominium - Filed

Court Fee: 438.00                        Attorney: CODILIS ERNEST J JR

Activity Date: 08/21/2019          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 08/21/2019          Participant: JPMORGAN CHASE BANK, NATI

Certificate Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 08/21/2019          Participant: JPMORGAN CHASE BANK, NATI

Summons Issued And Returnable

Attorney: CODILIS ERNEST J JR

Activity Date: 08/21/2019          Participant: JPMORGAN CHASE BANK, NATI

Case Set On Case Management Call

Date: 10/21/2019                    Judge: HORAN, CECILIA A.
Court Time: 0945                    Attorney: CODILIS ERNEST J JR
Court Room: 2804

Activity Date: 08/21/2019                                    Participant:

New Case Filing

Date: 12/16/2021
Court Time: 1000
Court Room: 2801

Activity Date: 08/23/2019          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 08/27/2019          Participant: JPMORGAN CHASE BANK, NATI

Notice Of Hearing Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 08/30/2021          Participant: JPMORGAN CHASE BANK, NATI

Continuance - Allowed -

Date: 12/09/2021
Court Time: 1000                              Judge: ROBLES, EDWARD N
Court Room: 2801                         Attorney: CODILIS ERNEST J JR

Activity Date: 08/30/2021          Participant: JPMORGAN CHASE BANK, NATI

Stay Of Execution

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 08/31/2021          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Of Compliance Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 09/05/2019          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 09/10/2019          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 09/13/2019          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 09/13/2019          Participant: JPMORGAN CHASE BANK, NATI

Affidavit For Service By Publication Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 09/18/2019          Participant: CODILIS ERNEST J JR

Certificate Of Mailing Notice By Publication Filed

Activity Date: 10/01/2019                              Participant:

Letter Returned Filed

Attorney: PRO SE

Activity Date: 10/02/2019          Participant: JPMORGAN CHASE BANK, NATI

Certificate Of Publication Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 10/03/2019          Participant: JPMORGAN CHASE BANK, NATI

Certificate Of Publication Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 10/20/2021          Participant: CODILIS ERNEST J JR

Motion Scheduled (Motion Counter Only)

Date: 11/04/2021
Court Time: 1000

Activity Date: 10/20/2021          Participant: JPMORGAN CHASE BANK, NATI

Appt. Selling Officer(Set For Motion Hearing)

Attorney: CODILIS ERNEST J JR

Activity Date: 10/20/2021          Participant: JPMORGAN CHASE BANK, NATI

Default(Set For Motion Hearing)

Attorney: CODILIS ERNEST J JR

Activity Date: 10/20/2021          Participant: JPMORGAN CHASE BANK, NATI

Judg. Of Foreclosure & Sale(Set For Motion Hearing)

Attorney: CODILIS ERNEST J JR

Activity Date: 10/20/2021          Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 10/20/2021          Participant: JPMORGAN CHASE BANK, NATI

Affidavit As To Military Service Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 10/21/2019          Participant: JPMORGAN CHASE BANK, NATI

Strike From Case Management Call - Allowed

Judge: HORAN, CECILIA A.
Attorney: CODILIS ERNEST J JR

Activity Date: 10/21/2021          Participant: WASHINGTON, RENEE

298 Defendant/Respondent- 100% - Granted/Allowed

Judge: ROBLES, EDWARD N

Activity Date: 10/25/2021   Participant: JPMORGAN CHASE BANK, NATI

Notice Of Motion Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 10/29/2021   Participant: WASHINGTON, RENEE

Exhibits Filed

Attorney: PRO SE

Activity Date: 10/29/2021   Participant: WASHINGTON, RENEE

Petition To Adjudicate Filed

Attorney: PRO SE

Activity Date: 10/29/2021   Participant: WASHINGTON, RENEE

Petition To File Appearance Filed

Attorney: PRO SE

Activity Date: 10/29/2021   Participant: WASHINGTON, RENEE

Proof Of Service Filed

Attorney: PRO SE

Activity Date: 11/04/2021   Participant: JPMORGAN CHASE BANK, NATI

Comply - Allowed -

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 11/04/2021   Participant: JPMORGAN CHASE BANK, NATI

Continuance - Allowed -

Date: 12/21/2021
Court Time: 1000     Judge: ROBLES, EDWARD N
Court Room: 2801     Attorney: CODILIS ERNEST J JR

Activity Date: 11/04/2021          Participant: WASHINGTON, RENEE

File Appearance Or Jury Demand, Answer Or Plead - Allowed -

Judge: ROBLES. EDWARD N

Activity Date: 11/04/2021          Participant: JPMORGAN CHASE BANK, NATI

Courts Motion This Case Is Taken Under Advisement

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 11/04/2021          Participant: JPMORGAN CHASE BANK, NATI

Courtesy Copies Required - Allowed

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 11/08/2021          Participant: WASHINGTON, RENEE

File Appearance Or Jury Demand, Answer Or Plead - Allowed -

Judge: ROBLES, EDWARD N

Activity Date: 11/08/2021          Participant: WASHINGTON, RENEE

Motion To - Denied -

Judge: ROBLES, EDWARD N

Activity Date: 11/12/2021          Participant: JPMORGAN CHASE BANK, NATI

Notice Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 11/15/2021          Participant: WASHINGTON, RENEE

Exhibits Filed

Attorney: PRO SE

Activity Date: 11/15/2021                Participant: WASHINGTON, RENEE

Amended Petition Filed

Attorney: PRO SE

Activity Date: 11/15/2021                Participant: WASHINGTON, RENEE

Petition Filed

Attorney: PRO SE

Activity Date: 11/15/2021                Participant: WASHINGTON, RENEE

Proof Of Service Filed

Attorney: PRO SE

Activity Date: 12/09/2021                Participant:

Case Removed From Remote Video Proceeding - Allowed

Activity Date: 12/21/2021                Participant: JPMORGAN CHASE BANK, NATI

Strike Or Withdraw Motion Or Petition - Allowed -

Judge: ROBLES, EDWARD N
Attorney: CODILIS ERNEST J JR

Activity Date: 12/23/2019                Participant: CODILIS ERNEST J JR

Motion Scheduled (Motion Counter Only)

Date: 01/14/2020
Court Time: 0945

Activity Date: 12/23/2019                Participant: JPMORGAN CHASE BANK, NATI

Affidavit Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 12/23/2019                Participant: JPMORGAN CHASE BANK, NATI

Notice Of Motion Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 12/23/2019      Participant: JPMORGAN CHASE BANK, NATI

Motion Filed

Attorney: CODILIS ERNEST J JR

Activity Date: 12/27/2019      Participant: JPMORGAN CHASE BANK, NATI

Certificate Of Service Filed

Attorney: CODILIS ERNEST J JR

Back to Top

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.

Renee A. Washington
567 Merrill Ave
Calumet City, IL 60409
708-567-3410
renee101@sbcglobal.net

1:22-cv-04401
Judge Thomas M. Durkin
Magistrate Judge Gabriel A. Fuentes
RANDOM

## IN THE UNITED STATES FEDERAL DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Renee A. Washington, an Individual.

Plaintiff,

V.

JPMorgan Chase Bank, National Association,
Ernest J Codilis, Codilis & Associates, P.C.,
MariClare O'Connor, Karen A. Yarbrough in her
individual capacity as Cook County Clerk
Recorder of Deeds, Iris Y. Martinez in her
individual capacity as the Clerk
of Circuit Court of Cook County, Timothy C.
Evans in his individual capacity as Circuit Court
of Cook County Chief Judge, Cook County,
Edward N. Robles in his individual capacity as
Associate Judge Chancery division of Circuit
Court of Cook County, Lynn Weaver-Boyle in her
individual capacity as the Circuit Judge Chancery
Division of Circuit Court of Cook County,
JPMorgan Chase Bank National Association,
Grant Law LLC., Maurice Grant and Senija
Grebovic
Defendants.

Request For Jury Trial

Reserve The Right To Amend

CASE #

42 U.S. CODE SEC. 1983 CIVIL ACTION
CLAIM IS FOR DEPRAVATION OF CIVIL
RIGHT UNDER COLOR OF LAW.

Comes Now Plaintiff Renee A. Washington, to file her Civil Claim to this matter in

this court of record with clean hands, without prejudice, with God given rights, God

granted rights, Creator endowed rights, and with all rights secured by the United States

Constitution and the State of Illinois Constitution invoked herein and no rights are

1

voluntarily or involuntarily being waived remedies or defenses, statutory or procedural,

and with all rights reserved including UCC 1-308 in dealing with this court, in Propria

Persona, Sui Juris (not Pro Se). Plaintiff Renee A. Washington is before this court and

respectfully files her civil lawsuit for herein, ("Plaintiff,") for her complaint against the

Defendants, and respectfully alleges the following:

This 42 U.S. Code Sec. 1983 Civil Action Claim is for Depravation of Civil Right Under

Color of Law. The state officers of the court are participating in fraud on the court. The

Cook County Recorder of Deeds are participating in recording deed fraud. The state court

judges are participating in the misconduct of making a legal determination with judicial

bias, and therefore the plaintiff did not get a fair and impartial procedure in the state court.

### 42 U.S. Code § 1983 - Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any
State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of
the United States or other person within the jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper proceeding for redress, except that in any
action brought against a judicial officer for an act or omission taken in such officer's judicial
capacity, injunctive relief shall not be granted unless a declaratory decree was violated or
declaratory relief was unavailable. For the purposes of this section, any Act of Congress
applicable exclusively to the District of Columbia shall be a statute of the District of Columbia.

### **Statement of Jurisdiction:**

Federal courts are authorized to hear cases brought under section 1983 pursuant to 28

U.S.C.A. §§ 1331, 1332 and 1343 (a)(3), 1367 and personal jurisdiction over the parties.

This Honorable Court has subject matter jurisdiction over the claims asserted pursuant to

42 U.S.C. § 1983 herein and personal jurisdiction over the parties. The Court also has

concurrent jurisdiction over the claims asserted pursuant to the laws of the State of Illinois.

Venue is properly set in Chicago, Illinois where all acts and omissions giving rise to this matter took place.

## PARTIES

1. Plaintiff Renee A. Washington is an Illinois resident, a disabled single woman is an adult who resides at 567 Merrill Ave, Calumet City, IL 60409 at all times relevant to this action citizen, taxpayer, trustee for Chicago Title Land Trust Company as Trustee a/k/a Trust No. 8002361708, and litigant that seeks Constitutional protections under the United States Constitution, the Illinois State Constitution.

2. Defendant Karen A. Yarbrough is the Clerk of Cook County Recorder of Deeds of the State of Illinois.

3. Defendant Iris Y. Martinez is the Clerk of the Circuit Court of Cook County of the State of Illinois.

4. Defendant Timothy C. Evans is Chief Judge of the Circuit Court of Cook County Cook County, of the State Illinois.

5. Defendant Edward N. Robles is the Associate Judge of the Chancery division of Circuit Court of Cook County, of the State of Illinois.

6. Defendant Lynn Weaver-Boyle, is the Circuit Judge of the Chancery Division of Circuit Court of Cook County, of the State of Illinois.

7. Defendant Grant Law LLC. and Maurice Grant is the law firm now representing plaintiff JPMorgan Chase Bank National Association in 2019CH09659, with offices located in Chicago, of the State of Illinois.

8. Defendant Senija Grebovic attorney of Grant Law LLC is the lawyer now representing plaintiff JPMorgan Chase Bank National Association in 2019CH09659, with offices located in Chicago, of the State of Illinois.

3

9. Defendant Codilis & Associates P.C., is the former law firm of plaintiff JPMorgan Chase Bank National Association in 2019Ch09659, with offices located in Chicago of the State of Illinois.

10. Defendant Ernest J. Codilis is an attorney of Codilis & Associates P.C., is the former law firm of plaintiff JPMorgan Chase Bank National Association in 2019Ch09659, with offices located in Chicago of the State of Illinois.

11. Defendant MariClare O'Connor is an attorney of Codilis & Associates P.C., is the former law firm of plaintiff JPMorgan Chase Bank National Association in 2019Ch09659, with offices located in Chicago of the State of Illinois.

12. Defendant JPMorgan Chase Bank National Association is the Plaintiff in 2019CH09659 and is a banking Corporation with a principal place of business at 1111 Polaris Parkway, Columbus OH 43240 and JPMorgan Chase & Co. is a bank and financial services holding company headquartered in New York City, an Agent of JPMorgan Chase Bank.

## JUDICIAL NOTICE

1. Plaintiff moves this Honorable Court to take Mandatory Judicial Notice under the Federal Rules of Civil Procedure Rule 201 (d) of the following:

The United States Supreme Court, in *Haines v Kerner* 404 U.S. 519 (1972), said that all litigants defending themselves must be afforded the opportunity to present their evidence and that the Court should look to the substance of the complaint rather than the form.

In *Platsky v CIA*, 953 F.2d 26 (2nd Cir. 1991), the Circuit Court of Appeals allowed that the District Court should have explained to the litigant proceeding without a lawyer, the correct form to the plaintiff so that he could have amended his pleadings accordingly.

2. Furthermore, according to Wayne N. Outten and Jack A. Raisner in "Plaintiff's Pleadings: Pitfalls to Avoid When Drafting the Complaint" a outten_raisner.pdf

4

https://www.americanbar.org/content/dam/aba/events/labor_law/basics_papers/elst/outten_raisner.pdf

"Although the court must limit its review to the facts stated on the face of the complaint, (Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991)),[3] a complaint drafted by a pro se plaintiff must be construed liberally. McGarry v. Pallito, 687 F.3d 505, 509 (2d Cir. 2012); Julian v. New York City Transit Authority, 857 F.Supp. 242 (E.D.N.Y.1994), aff'd, 52 F.3d 312 (2d Cir.1995) (citing Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Because the sanction of dismissal is harsh, courts are adjured to apply the rule of liberal construction "with particular strictness where the complaint alleges a violation of civil rights." Alie v. NYNEX Corp., 158 F.R.D. 239, 243 (E.D.N.Y.1994) (citing Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991)); see also McGarry v. Pallito, 687 F.3d 505, 510 (2d 2012) ("[The Second Circuit is] cautious about the hasty dismissal of complaint s alleging civil rights violations.")."

"3 The complaint may include: (1) documents appended to the complaint; (2) documents incorporated by reference in the complaint; and (3) facts taken on judicial notice. Pungitore v. Barbera, No. 12-1795-cv, 2012 WL 6621437, at *2 (2d Cir. Dec. 20, 2012). Moreover, the court may consider documents that the plaintiff relied upon in drafting complaint the complaint and bringing the suit. Magnifico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); Rothman v. Gregor, 220 F.3d 81, 88-9 (2d Cir. 2000). In the discrimination context, the court may even review the record of the EEOC. See, e.g., Holowecki v. Federal Expresss Corp., 440 F.3d 557, 565 (2d Cir. 2006), aff'd, 552 U.S. 389 (2008)."

3. Plaintiff respectfully reserves the right to amend this complaint.

## **JUDICIAL REVIEW**

    A. Affidavit Scrivener's of Error – mortgage without plaintiff signature, page 3 of 16 and page 4 of 16 recorded.
    B. Mortgage – factual page numbers are in the lower right, page 3 of 16 and page 4 of 16 are missing.
    C. Complaint To Foreclose Mortgage – page 3 of 16 and page 4 of 16 are missing factual page numbers are in the lower right.
    D. Identity Theft Affidavit
    E. ILCS Fraud Review
    F. Affidavit of Attempted Service Wrong Address

G. How To Correct a Previously Recorded Deed
H. Corrective Deed
I. Affidavit Scrivener's Instructions
J. Unlawful Clouding of Title
K. ILCS Forgery Law
L. ILCS Tampering with Public Records Law

### The Plaintiff Is A State Citizen Of The State Of Illinois:

The Plaintiff is a citizen of the State of Illinois and as such is not subject to a corporate

policies and rules without an injured party, and without an order from a judicial judge.

### FACTUAL BACKGROUND

The defendant's, acted with deliberate indifferent to the Constitution and or federal laws

when they violated the plaintiff's right UNDER 42 U.S. CODE§ SEC. 1983, and the

plaintiff's right to "due process". The defendant's conspired in a court hearing (in case

number 2019CH09659) to steal plaintiff property without an injured party to provide the

court with jurisdiction, without the original contract and mortgage filed in the court to

provide the court with jurisdiction, and without due process of law. The defendants

committed real estate deed fraud when they failed to deliver the plaintiff's property deed to

him as mandated in the state real estate property transfer statutes for the state of Illinois.

The defendants violated the plaintiff when the defendants ignored the plaintiff's

jurisdictional challenge with an affidavit and moved forward with the unlawful foreclosure

and eviction process.

1. There have been, and continue to be, violations against the civil and constitutional
   rights of undersigned Plaintiff in this cause, and which have not been duly protected.

2. This action involves state law claims based upon the laws of the State of Illinois as
   well as federal claims for violations of the First, Fourth, Fifth, Ninth, and Fourteenth
   Amendments to the United States Constitution brought pursuant to 42 U.S.C. §

1983. Section 1981 of Title 42 (Equal Rights Under the Law), Civil Rights Act of 1866 CHAP. XXXI.

3. The plaintiff became aware of a mortgage recorded and certified by the Cook County Recorder of Deeds via a false Affidavit of Scrivener's Error recording on May 2, 2021. The plaintiff notified the Cook County Recorder of Deeds Office fraud review department on May 3, 2021, May 14, 2021, and November 17, 2021. On information and belief, the Cook County Recorder of Deeds Office fraud review department in contradiction of the United States Constitution, Illinois State Constitution, public interest and public policy refused to refer defendant to the Illinois fraud review. (55 ILCS 5/3-5010.5) Sec. 3-5010.5.

4. Plaintiff is a fifty-six year old disabled African American female that was forced into foreclosure.

5. Defendant JPMorgan Chase Bank National Association refused to accept plaintiff's payments, plaintiff's CARES Act payment, or allow plaintiff a loan modification.

6. Plaintiff is informed and believe, and thereon alleges that the conspiracy started when plaintiff JPMorgan Chase Bank filed their Complaint To Foreclose 2019CH09659 with the Cook County Circuit Court on August 21, 2019 with page 3 of 16 and page 4 of 16 missing from the mortgage, recorded their Lis Pendens on August 23, 2019 and recorded their fraudulent mortgage without plaintiff's signature, notification, or consent via an Affidavit of Scrivener's Error on October 10, 2019 with the Cook County Recorder of Deeds.

7. Plaintiff is informed and believe, and thereon alleges that the recording of the mortgage on October 10, 2019 without her signature, knowledge or authority caused her to

become a victim of identity theft, Assumption Deterrence Act 18 U.S.C. §1028, Title 18 U.S.C. § 472 Uttering Counterfeit Obligations or Securities, 18 U.S. Code § 484 - Connecting parts of different notes, Tampering (720 ILCS 5/32-8), Forgery 720 ILCS 5/17-3, (720 ILCS 5/17-13) Sec. 17-13. Fraud in transfers of real and personal property, and 720 ILCS 5/32-13 Sec. 32-13. Unlawful clouding of title.

8. Plaintiff is informed and believe, and thereon alleges that the Circuit Court of Cook County and the Cook County Recorder of Deeds is part of the conspiracy to deprive plaintiff of her property, her United States Constitutional rights and her Illinois State Constitutional rights.

9. Plaintiff is informed and believe, and thereon alleges that the Circuit Court of Cook County arbitrarily and wrongfully denied plaintiff equal access to justice.

10. As a direct and proximate result of the acts of Defendants, Plaintiff suffered the following injuries and damages:

Violation of her constitutional rights under the First Amendment; to the United States Constitution

Violation of her constitutional rights under the Fourth Amendment; to the United States Constitution to be free from an unreasonable search and seizure of his person;

Violation of her constitutional rights under the Fifth Amendment; to the United States Constitution

Violation of her constitutional rights under the Ninth Amendment; to the United States Constitution

Violation of the Fourteenth Amendment substantive due process right; and

Violation of her constitutional rights under the Section 1. Inherent And Inalienable Rights; to the State of Illinois Constitution

Violation of her constitutional rights under the Section 2. Due Process And Equal Protection of the law; to the State of Illinois Constitution

Violation of her constitutional rights under the Section 3. Oath Or Affirmation Of Office; to the State of Illinois Constitution

Violation of her constitutional rights under the Section 12. Right To Remedy And Justice; to the State of Illinois Constitution

Violation of her constitutional rights under the Section 18. No Discrimination On The Basis Of Sex; to the State of Illinois Constitution

11. Tremendous and irreparable emotional and mental harm.

12. The grossly negligent, reckless actions of Defendants violated laws of the State of Illinois as well as clearly established and well-settled federal constitutional rights of Plaintiff with deliberate indifference:

13. Freedom from an unreasonable search and seizure;

14. Freedom from the use of excessive, unreasonable, and unjustified force against his person;

15. Equal Protection under the law; and

16. Substantive Due Process.

## COUNT ONE- DEPRIVATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE§ 1983 WRONGFUL USE OF CIVIL PROCEEDINGS AND ABUSE OF PROCESS INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT

17. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

18. Plaintiff is informed and believes during Reconstruction African American citizens were denied the right to vote and that a debate occurred in our country that resulted in the ratification of the Fifteenth Amendment. Further, Plaintiff is informed and believes the Fifteenth Amendment was made possible in part by black abolitionists like Frederick Douglass who in 1865 poignantly stated:

"But if we know enough to be hung, we know enough to vote. If the Negro knows

9

enough to pay taxes to support government, he knows enough to vote, taxation and representation should go together. If he knows enough to shoulder a musket and fight for the flag for the government he knows enough to vote. What I ask for the Negro is not benevolence, not pity, not sympathy, but simply justice."

(Frederick Douglas, Speech before Massachusetts Anti-Slavery Society, April 1865.)

19. Plaintiff is informed and believes subsequent to the Fifteenth Amendment's enactment countless acts of aggression were committed against African Americans for reasons related solely to the color of their skin and for the purposes of depriving them of the constitutional rights guaranteed by the Fifteenth Amendment and that these constitutional violations were committed by State actors and private persons.

20. Plaintiff is informed and believes that the many constitutional violations committed against African Americans led Congress to pass 42 U.S.C. § 1983 during the 42nd Congress in 1871 and that although Section 1983 was the result of African American suffering it went further ensured all citizens a right to enforce equal protection under the law.

21. Plaintiff is informed and believes Section 1983 creates liability for state actors and private persons who violate the constitutional rights of any United States citizen and that Congress's original intent to extend liability to private persons is evidenced by the name (Ku Klux Klan Act) given to the 1871 amendment to the Civil Rights Act.

22. Defendant Cook County Recorder of Deeds at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law in her position as the Cook County Clerk Recorder of Deeds with the County of Cook in the State of Illinois. Further, Defendant Cook County Recorder, acted jointly with the other co-defendants to produce constitutional violations against

Plaintiff, namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual fraudulent recording of a mortgage without plaintiff's signature.

23. Defendant Edward N. Robles at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as an ssociate judge with the County of Cook Further, Defendant Edward N. Robles, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

24. Defendant Lynn Weaver Boyle at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in her position as a circuit judge with the County of Cook. Further, Defendant Lynn Weaver Boyle, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

25. Defendant Senija Grebovic attorney of Grant Law LLC., at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in her position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis,

11

MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

26. Defendant Ernest J. Codilis, MariClare O'Connor at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

27. Defendant Ernest J. Codilis, MariClare O'Connor at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

28. Defendant JPMorgan Chase Bank National Association at all times relevant to this Complaint acted under color of state law when they recorded a false mortgage. Further, Defendant JPMorgan Chase Bank National Association, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

29. The Defendants' JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct of recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, privileges, or immunities secured by the Constitution of the United States.

30. Particularly, defendant's JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct arbitrarily and wrongfully deprived plaintiff of her rights

13

protected by the first amendment of the United States Constitution. The defendants

abridged the freedom of speech of plaintiff when they recorded a mortgage without

plaintiff's signature or knowledge.

31. The Defendants' Cook County Recorder of Deeds conduct of certifying and recording

a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's

signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God

given rights, inalienable rights inherent in being human, to be free, to be treated equal

to other groups, to have some protections against state power privileges, or immunities

secured by the Constitution of the United States.

32. Particularly, defendant's Cook County Recorder of Deeds conduct arbitrarily and

wrongfully deprived plaintiff of her rights protected by the first amendment of the

United States Constitution. The defendants abridged the freedom of speech of plaintiff

when they recorded a mortgage without plaintiff's signature or knowledge.

33. The Defendants' Circuit Court of Cook County Edward N. Robles, Lynn Weaver

Boyle conduct of claiming they did not receive plaintiff's motions, petitions, and

affidavits in 2019CH09659 arbitrarily and wrongfully deprived plaintiff of her God

given rights, inalienable rights inherent in being human, to be free, to be treated equal

to other groups, to have some protections against state power, privileges, or immunities

secured by the Constitution of the United States. Circuit Court of Cook County

Edward N. Robles specifically stated "stop reading everything on the internet is not

true. Circuit Court of Cook County Lynn Weaver specifically stated "your motions

affidavits all are frivolous"

34. Particularly, defendant's Circuit Court of Cook County Edward N. Robles, Lynn

14

Weaver Boyle conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the first amendment of the United States Constitution. The defendants abridged the freedom of speech of plaintiff, arbitrarily and wrongfully denied plaintiff a right to petition the government for a redress of grievances, when they claimed they did not receive plaintiff's motions, petitions, and affidavits.

35. Defendant Senija Grebovic attorney of Grant Law LLC., conduct of telling judge Lynn Weaver Boyle that plaintiffs motions, petitions, and affidavits were gibberish and frivolous arbitrarily and wrongfully denied the plaintiff a right to freedom of speech and a right to petition the government for a redress of grievances.

36. Defendants actions were not objectively reasonable in light of the facts and circumstances that plaintiff did nothing illegal or even remotely suspicious to justify a mortgage recorded without her signature. And defendants continued to arbitrarily and wrongfully deny plaintiff freedom of speech and her right to petition the government.

37. As a direct and proximate result of the constitutional violations committed by defendants plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

## COUNT TWO- DEPRIVATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE§ 1983 WRONGFUL USE OF CIVIL PROCEEDINGS AND AUBUSE OF PROCESS AND UNLAWFUL SIEZURE OF PROPERTY INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT

38. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

39. Defendant Cook County Recorder of Deeds at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law

in her position as the Cook County Clerk Recorder of Deeds with the County of Cook in the State of Illinois. Further, Defendant Cook County Recorder, acted jointly with the other co-defendants to produce constitutional violations against Plaintiff, namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive recording of a mortgage without plaintiff's signature and abusive court proceeding in 2019CH09659 case.

40. Defendant Edward N. Robles at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as an associate judge with the County of Cook Further, Defendant Edward N. Robles, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual fraudulent court proceeding in 2019CH09659 case.

41. Defendant Lynn Weaver Boyle at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as a circuit judge with the County of Cook. Further, Defendant Lynn Weaver Boyle, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process,

denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

42. Defendant Senija Grebovic attorney of Grant Law LLC., at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

43. Defendant Ernest J. Codilis, MariClare O'Connor at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as officers of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

44. Defendant JPMorgan Chase Bank National Association at all times relevant to this Complaint acted under color of state law when they recorded a mortgage without

plaintiff's signature. Further, Defendant JPMorgan Chase Bank National Association, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

45. The Defendants' JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct of recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, privileges, or immunities secured by the Constitution of the United States.

46. Particularly, defendant's JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourth amendment of the Constitution of the United States, guaranteeing citizens the right "to be secure in their persons…against unreasonable seizures" of the person and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property, under oath, without a warrant, without the correct legal description, without consent when they recorded a mortgage without plaintiff's signature or knowledge. Exhibit "A"

47. The Defendants' Cook County Recorder of Deeds conduct of certifying and recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God

given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power privileges, or immunities secured by the Constitution of the United States.

48. Particularly, defendant's Cook County Recorder of Deeds conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourth amendment of Constitution of the United States, guaranteeing citizens the right "to be secure in their persons…against unreasonable seizures" of the person and their right to be free from unnecessary governmental interference. The defendants arbitrarily and wrongfully seized plaintiff's property under oath, without a warrant, without consent, without the correct legal description when they certified and recorded a mortgage without plaintiff's signature or knowledge.

49. The Defendants' Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct of claiming they did not receive plaintiff's motions, petitions, and affidavits in 2019CH09659 arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power, privileges, or immunities secured by the Constitution of the United States. Circuit Court of Cook County Edward N. Robles specifically stated "stop reading everything on the internet is not true. Circuit Court of Cook County Lynn Weaver specifically stated "your motions affidavits all are frivolous"

50. Particularly, defendant's Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourth amendment of Constitution of the United States, guaranteeing

citizens the right "to be secure in their persons…against unreasonable seizures" of the person and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property, under oath, without a warrant, without consent when they, claimed they did not receive plaintiff's motions, petitions, and affidavits.

51. Defendant Senija Grebovic attorney of Grant Law LLC., conduct of telling judge Lynn Weaver Boyle that plaintiffs motions, petitions, and affidavits were gibberish and frivolous arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourth amendment of Constitution of the United States, guaranteeing citizens the right "to be secure in their persons…against unreasonable seizures" of the person and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property under oath, without a warrant, without a correct legal description and without consent.

52. Defendants actions were not objectively reasonable in light of the facts and circumstances that plaintiff did nothing illegal or even remotely suspicious to justify a mortgage recorded without her signature. And defendants continued to deny plaintiff a right to be secure in her person, house and papers.

53. As a direct and proximate result of the constitutional violations committed by defendants plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

## COUNT THREE- DEPRIVATION OF PLAINTIFF'S FIFTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE § 1983 WRONGFUL USE OF CIVIL PROCEEDINGS AND ABUSE OF PROCESS INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT

54. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth

herein.

55. Defendant Cook County Recorder of Deeds at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law in her position as the Cook County Clerk Recorder of Deeds with the County of Cook in the State of Illinois. Further, Defendant Cook County Recorder, acted jointly with the other co-defendants to produce constitutional violations against Plaintiff, namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive recording of a mortgage without plaintiff's signature and court proceeding in 2019CH09659 case.

56. Defendant Edward N. Robles at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as an associate judge with the County of Cook Further, Defendant Edward N. Robles, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

57. Defendant Lynn Weaver Boyle at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as a circuit judge with the County of Cook. Further, Defendant Lynn Weaver Boyle, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free

21

from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

58. Defendant Senija Grebovic attorney of Grant Law LLC., at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

59. Defendant Ernest J. Codilis, MariClare O'Connor at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as officers of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

60. Defendant JPMorgan Chase Bank National Association at all times relevant to this Complaint acted under color of state law when they recorded a mortgage without plaintiff's signature. Further, Defendant JPMorgan Chase Bank National Association, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

61. The Defendants' JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct of recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, privileges, or immunities secured by the Constitution of the United States.

62. Particularly, defendant's JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fifth amendment of the Constitution of the United States, guaranteeing citizens the right "nor be deprived of life, liberty, or property, without due process of law of the person and their right to be free from unnecessary governmental interference. The defendants did not notify plaintiff of a mortgage recorded on October 10, 2019 under oath and without plaintiff's signature and case 2019CH09659. Exhibit "A". The defendants under oath submitted on August 21, 2019 in 2019CH09659 a complaint that was missing two pages. Exhibit "B","C". Defendants then later under oath record the

23

two missing pages. Defendants later on October 20, 2021 include the two pages in their Motion for Entry of Judgment and Foreclosure. The defendants under oath, attempted to serve plaintiff at an address she does not live at. See Exhibit "F".

63. The Defendants' Cook County Recorder of Deeds arbitrary and wrongful conduct of certifying and recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power privileges, or immunities secured by the Constitution of the United States.

64. Particularly, defendant's Cook County Recorder of Deeds conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fifth amendment of Constitution of the United States, guaranteeing citizens the right "nor be deprived of life, liberty, or property, without due process of law of the person and their right to be free from unnecessary governmental interference". The defendants certified and recorded under oath, without plaintiff signature a mortgage. Further the defendants arbitrarily and wrongfully refused to refer plaintiff to Illinois fraud review.

65. The Defendants' Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct of claiming they did not receive plaintiff's motions, petitions, and affidavits in 2019CH09659 case arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power, privileges, or immunities secured by the Constitution of the United States. Circuit Court of Cook County Edward N. Robles specifically stated "stop reading everything on the internet is

24

not true. Circuit Court of Cook County Lynn Weaver specifically stated "your motions affidavits all are frivolous".

66. Particularly, defendant's Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fifth amendment of Constitution of the United States, guaranteeing citizens the right "nor be deprived of life, liberty, or property, without due process of law of the person and their right to be free from unnecessary governmental interference". The defendants, under oath, arbitrarily and wrongfully denied plaintiff due process of law when they, claimed they did not receive plaintiff's motions, petitions, and affidavits.

67. Defendant Senija Grebovic attorney of Grant Law LLC., conduct of telling judge Lynn Weaver Boyle that plaintiffs motions, petitions, and affidavits were gibberish and frivolous deprived plaintiff of her rights protected by the fifth amendment of Constitution of the United States, guaranteeing citizens the right "nor be deprived of life, liberty, or property, without due process of law of the person and their right to be free from unnecessary governmental interference. The defendants under oath, without a correct legal description, arbitrarily and wrongfully denied plaintiff of due process of law.

68. Defendants actions were not objectively reasonable in light of the facts and circumstances that plaintiff did nothing illegal or even remotely suspicious to justify a mortgage recorded without her signature. And defendants continued to deny plaintiff a right to be secure in her person, house and papers.

69. As a direct and proximate result of the constitutional violations committed by

25

defendants plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

## COUNT FOUR- DEPRIVATION OF PLAINTIFF'S NINTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE§ 1983 WRONGFUL USE OF CIVIL PROCEEDINGS AND ABUSE OF PROCESS INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT

70. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

71. Defendant Cook County Recorder of Deeds at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law in her position as the Cook County Clerk Recorder of Deeds with the County of Cook in the State of Illinois. Further, Defendant Cook County Recorder, acted jointly with the other co-defendants to produce constitutional violations against Plaintiff, namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive recording of a mortgage without plaintiff's signature and court proceeding in 2019CH09659 case.

72. Defendant Edward N. Robles at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as an associate judge with the County of Cook Further, Defendant Edward N. Robles, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the

eventual abusive court proceeding in 2019CH09659 case.

73. Defendant Lynn Weaver Boyle at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as a circuit judge with the County of Cook. Further, Defendant Lynn Weaver Boyle, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

74. Defendant Senija Grebovic attorney of Grant Law LLC., at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

75. Defendant Ernest J. Codilis, MariClare O'Connor at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as

officers of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

76. Defendant JPMorgan Chase Bank National Association at all times relevant to this Complaint acted under color of state law when they recorded a mortgage without plaintiff's signature. Further, Defendant JPMorgan Chase Bank National Association, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

77. The Defendants' JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., arbitrary and wrongful conduct of recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, privileges, or immunities secured by the Constitution of the United States.

78. Particularly, defendant's JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the ninth amendment of the Constitution of the United States,

guaranteeing citizens the right "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" and their right to be free from unnecessary governmental interference". The defendants seized plaintiff's property, under oath, without a warrant, without the correct legal description, without consent when they recorded a mortgage without plaintiff's signature or knowledge.

79. The Defendants'   Cook County Recorder of Deeds arbitrary and wrongful conduct of certifying and recording a mortgage without providing the plaintiff with notice, consent or acquiring plaintiff's signature on the mortgage arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power privileges, or immunities secured by the Constitution of the United States.

80. Particularly, defendant's Cook County Recorder of Deeds conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the ninth amendment of Constitution of the United States, guaranteeing citizens the right "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. the deprivation of any rights, privileges, or immunities secured by the Constitution and laws and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property under oath, without a warrant, without consent, without the correct legal description when they certified and recorded a mortgage without plaintiff's signature or knowledge.

81. The Defendants'   Circuit Court of Cook County Edward N. Robles, Lynn Weaver

29

Boyle conduct of claiming they did not receive plaintiff's motions, petitions, and affidavits in 2019CH09659 case arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power, privileges, or immunities secured by the Constitution of the United States. Circuit Court of Cook County Edward N. Robles specifically stated "stop reading everything on the internet is not true. Circuit Court of Cook County Lynn Weaver specifically stated "your motions affidavits all are frivolous"

82. Particularly, defendant's Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the ninth amendment of Constitution of the United States, guaranteeing citizens the right "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. the deprivation of any rights, privileges, or immunities secured by the Constitution and laws and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property, under oath, without a warrant, without consent when they, claimed they did not receive plaintiff's motions, petitions, and affidavits.

83. Defendant Senija Grebovic attorney of Grant Law LLC., conduct of telling judge Lynn Weaver Boyle that plaintiffs motions, petitions, and affidavits were gibberish and frivolous arbitrarily and wrongfully deprived plaintiff of her rights protected by the ninth amendment of Constitution of the United States, guaranteeing citizens the right "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people. the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property under oath, without a warrant, without a correct legal description and without consent.

84. Defendants actions were not objectively reasonable in light of the facts and circumstances that plaintiff did nothing illegal or even remotely suspicious to justify a mortgage recorded without her signature. And defendants continued to deny plaintiff a right to be secure in her person, house and papers.

85. As a direct and proximate result of the constitutional violations committed by defendants plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

## COUNT FIVE- DEPRIVATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS ACTIONABLE UNDER 42 U.S. CODE§ 1983 WRONGFUL USE OF CIVIL PROCEEDINGS AND ABUSE OF PROCESS INCORPORATED PURSUANT TO THE FOURTEENTH AMENDMENT

1. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

2. Defendant Cook County Recorder of Deeds at all times relevant to this Complaint acted under color of state law and exercised power possessed by virtue of state law in her position as the Cook County Clerk Recorder of Deeds with the County of Cook in the State of Illinois. Further, Defendant Cook County Recorder, acted jointly with the other co-defendants to produce constitutional violations against Plaintiff, namely the right to be free from unnecessary governmental intrusion, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

3. Defendant Edward N. Robles at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as an associate judge with the County of Cook Further, Defendant Edward N. Robles, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, and the eventual abusive court proceeding in 2019CH09659 case.

4. Defendant Lynn Weaver Boyle at all times relevant to this Complaint acted under color of state law when he voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in his position as a circuit judge with the County of Cook. Further, Defendant Lynn Weaver Boyle, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

5. Defendant Senija Grebovic attorney of Grant Law LLC., at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as an officer of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary

governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

6. Defendant Ernest J. Codilis, MariClare O'Connor at all times relevant to this Complaint acted under color of state law when they voluntarily undertook the duties traditionally reserved by the State of Illinois by virtue of state law in their position as officers of the court with the County of Cook. Further, Defendant Ernest J. Codilis, MariClare O'Connor, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

7. Defendant JPMorgan Chase Bank National Association at all times relevant to this Complaint acted under color of state law when they recorded a mortgage without plaintiff's signature. Further, Defendant JPMorgan Chase Bank National Association, acted jointly with the other co-defendants to produce constitutional violations namely the right to be free from unnecessary governmental intrusion, arbitrary and wrongful government actions, unlawful seizure and detention of Plaintiff's property, denial of due process, denial of right to defend herself in 2019CH09659 and the eventual abusive court proceeding in 2019CH09659 case.

8. The Defendants' JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct of recording a mortgage without providing the plaintiff with

notice, consent or acquiring plaintiff's signature on the mortgage deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, privileges, or immunities secured by the Constitution of the United States.

9. Particularly, defendant's JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourteenth amendment of the Constitution of the United States, guaranteeing citizens the right "which prohibits the states from depriving any person of life, liberty, or property, without due process of law" and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property, under oath, without a warrant, without the correct legal description, without consent when they recorded a mortgage without plaintiff's signature or knowledge. The defendant JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., and MariClare O'Connor conduct of recording a mortgage without plaintiff's signature, knowledge, consent, or notice deprived the plaintiff of due process. The defendant JPMorgan Chase Bank National Association, Ernest J. Codilis & Associates P.C., conduct of attempting service at a wrong address deprived plaintiff of due process. The defendant arbitrarily and wrongfully conduct of submitting a complaint in 2019CH09659 with two pages missing and later recording the two pages, and later adding the two pages in a subsequent motion deprived the plaintiff of fundamental fairness, truthfulness and honesty.

10. The Defendants' Cook County Recorder of Deeds arbitrarily and wrongfully conduct of certifying and recording a mortgage without providing the plaintiff with notice,

consent or acquiring plaintiff's signature on the mortgage deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power privileges, or immunities secured by the Constitution of the United States.

11. Particularly, defendant's Cook County Recorder of Deeds conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourteenth amendment of Constitution of the United States, guaranteeing citizens the right "which prohibits the states from depriving any person of life, liberty, or property, without due process of law" and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property under oath, without a warrant, without consent, without the correct legal description when they certified and recorded a mortgage without plaintiff's signature or knowledge. The defendant's Cook County Recorder of Deeds arbitrarily and wrongfully conduct of certifying and recording a mortgage without plaintiff's signature and refusing to refer plaintiff to fraud review and referral arbitrarily and wrongfully deprived the plaintiff of a hearing, right to be heard, and the due process of law.

12. The Defendants' Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct of claiming they did not receive plaintiff's motions, petitions, and affidavits in 2019CH09659 case arbitrarily and wrongfully deprived plaintiff of her God given rights, inalienable rights inherent in being human, to be free, to be treated equal to other groups, to have some protections against state power, privileges, or immunities secured by the Constitution of the United States. Circuit Court of Cook County Edward N. Robles specifically stated "stop reading everything on the internet is

35

not true.     Circuit Court of Cook County Lynn Weaver specifically stated "your motions affidavits all are frivolous"

13. Particularly, defendant's Circuit Court of Cook County Edward N. Robles, Lynn Weaver Boyle conduct arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourteenth amendment of Constitution of the United States, guaranteeing citizens the right "which prohibits the states from depriving any person of life, liberty, or property, without due process of law" and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property, under oath, without a warrant, without consent when they, claimed they did not receive plaintiff's motions, petitions, and affidavits. The defendants Circuit Court of Cook County Edward N. Robles, and Lynn Weaver Boyle conduct of claiming they did not receive plaintiff's motions, petitions and affidavits deprived plaintiff a fair and impartial judge, fundamental fairness, the right to a hearing, and due process.

14. Defendant Senija Grebovic attorney of Grant Law LLC., conduct of telling judge Lynn Weaver Boyle that plaintiffs motions, petitions, and affidavits were gibberish and frivolous arbitrarily and wrongfully deprived plaintiff of her rights protected by the fourteenth amendment of Constitution of the United States, guaranteeing citizens the right "which prohibits the states from depriving any person of life, liberty, or property, without due process of law" and their right to be free from unnecessary governmental interference. The defendants seized plaintiff's property under oath, without a warrant, without a correct legal description and without consent.

15. Defendants actions were not objectively reasonable in light of the facts and circumstances that plaintiff did nothing illegal or even remotely suspicious to justify a

mortgage recorded without her signature. And defendants continued to deny plaintiff a right to be secure in her person, house and papers.

16. As a direct and proximate result of the constitutional violations committed by defendants plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

## COUNT SIX- DEPRIVATION OF PLAINTIFF'S NEGLIGENT HIRING, SUPERVISION AND RETENTION AS TO COOK COUNTY RECORDER OF DEEDS
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS)

1. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

2. Defendants owed statutory and common law duties to the public at large, and to Plaintiff in particular, to refrain from negligently hiring, training, supervising and/or retaining employees.

3. Further, these Defendants had an obligation to hire and retain recorder of deeds employees who were free from gender and racial animus and who would fulfill their oath to serve all Americans regardless of a person's age, race, color, religion, gender or national origin.

4. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Karen A. Yarbrough of the Cook County Recorder of Deeds Office and knowingly retained this person.

5. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Karen A. Yarbrough and knowingly retained this person who was upon information and belief undertrained, unqualified, or unable to perform the duties of a county recorder as a reasonable person would.

6. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Karen A. Yarbrough Defendants knew or should have known that hiring and

retaining them as county recorder presented a danger to the public at large, and to Plaintiff in particular and that it was foreseeable that Defendant Karen A. Yarbrough would fail to perform their responsibility in a reasonable manner that was consistent with generally accepted certifying and recording of mortgages procedure and protocol.

7. Defendant failed to perform reasonable training and supervision of its county recorder including, but not limited to the following areas:

        a. Recording of mortgages;

        b. Certification of mortgages;

        c. Referral to fraud review when a mortgage is recorded without a signature;

        d. Preventing unlawful conduct by its employees;

        e. Ensuring proper communication between fraud review and the public;

        g. Balancing lawful objectives with appropriate referral to fraud review; and

        h. Any additional particulars ascertained in discovery for this case or at trial.

8. As a direct, foreseeable and proximate result of the negligent, grossly negligent, reckless, willful and wanton acts and/or omissions of Defendants, Plaintiff Renee A. Washington suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, and emotional anguish.

9. Due to willful, wanton, reckless, grossly negligent, and negligent acts of the Defendants set out above, Plaintiffs are entitled to recover actual and punitive damages from Defendants as determined by a jury.

## COUNT SEVEN- NEGLIGENT HIRING, SUPERVISION AND RETENTION AS TO COOK COUNTY CIRCUIT COURT
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS)

1.  Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

2.  Defendants owed statutory and common law duties to the public at large, and to Plaintiff in particular, to refrain from negligently hiring, training, supervising and/or retaining employees.

3.  Further, these Defendants had an obligation to hire and retain judges who were free from judicial bias, gender and racial animus and who would fulfill their oath to serve all Americans regardless of a person's age, race, color, religion, gender or national origin.

4.  Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Edward N. Robles and Lynn Weaver Boyle of the Circuit Court Cook County and knowingly retained this person(s).

5.  Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Edward N. Robles and Lynn Weaver Boyle and knowingly retained this person who was upon information and belief undertrained, unqualified, or unable to perform the duties of a judge in an unbiased impartial manner as a reasonable person would.

6.  Upon information and belief, these Defendants were negligent in hiring and retaining Defendant Edward N. Robles and Lynn Weaver Boyle Defendants knew or should have known that hiring and retaining them as judges presented a danger

39

to the public at large, and to Plaintiff in particular. and that it was foreseeable that Defendant Edward N. Robles and Lynn Weaver Boyle would fail to perform their responsibility in a reasonable manner that was consistent with generally accepted unbiased impartial judicial procedure and protocol.

7.  Defendant failed to perform reasonable training and supervision of judge Edward N. Robles and Lynn Weaver Boyle including, but not limited to the following areas:

   a.  Fundamental fairness;

   b.  Fair and impartial unbias judge;

   c.  Fair hearing;

   d.  Preventing unlawful conduct by its employees;

   e.  Ensuring judicial independence to protects individuals from the arbitrary use of government power and ensures the rule of law;

   g.  Balancing lawful objectives with judicial integrity; and

   h.  Any additional particulars ascertained in

   discovery for this case or at trial.

8.  As a direct, foreseeable and proximate result of the negligent, grossly negligent, reckless, willful and wanton acts and/or omissions of Defendants, Plaintiff Renee A. Washington suffered conscious physical harm and injury, and endured pain and suffering, including mental distress, and emotional anguish.

9.  Due to willful, wanton, reckless, grossly negligent, and negligent acts of the Defendants set out above, Plaintiffs are entitled to recover actual and punitive damages from Defendants as determined by a jury.

## COUNT EIGHT- NEGLIGENT HIRING, SUPERVISION AND RETENTION AS TO CODILIS & ASSOCIATES P.C.
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS)

10. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

11. Defendants owed statutory and common law duties to the public at large, and to Plaintiff in particular, to refrain from negligently hiring, training, supervising and/or retaining employees.

12. Further, these Defendants had an obligation to hire and retain attorneys who were free from judicial bias, gender and racial animus and who would fulfill their oath to serve all Americans regardless of a person's age, race, color, religion, gender or national origin.

13. Upon information and belief, these Defendants were negligent in hiring and retaining MariClare O'Connor, Ernest J. Codilis, of and Codilis & Associates P.C., Senija Grebovic of and Grant Law LLC. and knowingly retained this(s) person (s).

14. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant MariClare O'Connor, Ernest J. Codilis, of and Codilis & Associates P.C., Senija Grebovic of and Grant Law LLC and knowingly retained this person who was upon information and belief undertrained, unqualified, or unable to perform the duties of a attorneys in an unbiased impartial manner as a reasonable person would.

15. Upon information and belief, these Defendants were negligent in hiring and retaining Defendant MariClare O'Connor, Ernest J. Codilis, of and Codilis &

Associates P.C., Senija Grebovic of and Grant Law LLC Defendants knew or
should have known that hiring and retaining them as attorneys presented a danger
to the public at large, and to Plaintiff in particular. and that it was foreseeable that
Defendant MariClare O'Connor, Ernest J. Codilis, of and Codilis & Associates
P.C., Senija Grebovic of and Grant Law LLC would fail to perform their
responsibility in a reasonable manner that was consistent with generally accepted
unbiased impartial procedure and protocol.

16. Defendant failed to perform reasonable training and supervision of its attorneys
including, but not limited to the following areas:

      a. Fundamental fairness;

      b. Fair and impartial pleadings;

      c. Fair hearing;

      d. Preventing unlawful conduct by its employees;

      e. Ensuring judicial integrity to protects individuals from the arbitrary use of legal power and ensures the rule of law;

      g. Balancing lawful objectives with judicial integrity; and

      h. Any additional particulars ascertained in

      discovery for this case or at trial.

17. As a direct, foreseeable and proximate result of the negligent, grossly negligent,
reckless, willful and wanton acts and/or omissions of Defendants, Plaintiff
Renee A. Washington suffered conscious physical harm and injury, and endured pain
and suffering, including mental distress, and emotional anguish.

18. Due to willful, wanton, reckless, grossly negligent, and negligent acts of the
Defendants set out above, Plaintiffs are entitled to recover actual and punitive

damages from Defendants as determined by a jury.

## COUNT NINE- NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANTS KAREN A YARBROUGH, AND COOK COUNTY RECORDER OF DEEDS
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS)

1. Plaintiff realleges and reincorporate all preceding paragraphs as if fully set forth herein.

2. Plaintiffs are informed and believe the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their recorder duties and to ensure their conduct conformed to generally accepted recording and certifying of mortgages standards.

3. Plaintiffs are informed and believe the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their fraud referral and review duties and to ensure their conduct conformed to generally accepted fraud review and referral standards.

4. Plaintiffs are informed and believe that at all times relevant hereto Defendant Karen A. Yarbrough were the recorder of Cook County Clerk and as such Cook County Clerk is vicariously liable for their acts and/or omissions that proximately caused Defendant's unlawful seizure of property, mortgage fraud, wrongful use of civil proceedings, and abuse of process.

5. On October 2, 2019, Defendants failed to use due care and were grossly negligent, negligent, reckless, willful and wanton in the following particulars:

   a. Failing to follow proper protocol and procedures for certifying a mortgage;
   b. Causing and allowing untrained employees to unlawfully seize the Plaintiff property;
   c. Failing to use the appropriate recording process for conveyances per (765 ILCS 5/9); and
   d. In such other particulars as may be shown at trial or ascertained

in discovery.

6. On October 10, 2019, Defendants failed to use due care and were grossly negligent,

negligent, reckless, willful and wanton in the following particulars:

   a. Failing to follow proper protocol and procedures for recording a mortgage;
   b. Failing to accurately records, stores and maintains land records and other official documents;
   c. Failing to require a judge's order before recording a mortgage while plaintiff was in 2019CH09659 case;
   d. Failing to obtain a signature from the plaintiff before recording the mortgage;
   e. Causing and allowing untrained employees to unlawfully seize the Plaintiff property;
   f. Failing to use the appropriate recording process for conveyances per (765 ILCS 5/9); and
   g. In such other particulars as may be shown at trial or ascertained in discovery.

7. On May 3, 2021, May 14, 2021, and November 17, 2021 emails to

clerk.RecordsFraud@cookcountyil.gov. Defendants failed to use due care and were

grossly negligent, negligent, reckless, willful and wanton in the following

particulars:

   a. Failing to follow proper protocol and procedures for referring plaintiff to fraud review per (55 ILCS 5/3-5010.5);
   b. Failing to follow proper protocol and procedures for referring plaintiff to fraud review and referral when fraud is evident, plaintiff signature is not on the mortgage;
   c. Failing to adhere to their website statement "The property fraud unit helps homeowners investigate fraudulent filings against their property and coordinate law enforcement efforts on behalf of victims."
   d. Causing and allowing untrained employees to unlawfully seize the Plaintiff property;
   e. Failing to use the appropriate recording process for conveyances per (765 ILCS 5/9) Conveyances Act.; and
   f. In such other particulars as may be shown at trial or ascertained in discovery.

8. All of the above referenced acts and/or omissions and/or commissions are in

violation of the common laws and statutes of the State of Illinois, as well as the

Defendants' obligations and duties to Plaintiff.

## COUNT TEN- NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANTS EDWARD N. ROBLES. LYNN WEAVER BOYLE AND COOK COUNTY CIRCUIT COURT
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS)

1. Plaintiff realleges and reincorporate all preceding paragraphs as if fully set forth herein.

2. Plaintiffs are informed and believe the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their judge duties and to ensure their conduct conformed to generally accepted fair and impartial judicial standards.

3. Plaintiffs are informed and believe the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their oath of office to support the United States Constitution and State of Illinois Constitution and to ensure their conduct conformed to generally accepted due process of law standards.

4. Plaintiffs are informed and believe that at all times relevant hereto Defendant Edward N. Robles and Lynn Weaver Boyle were the judge of Circuit Court of Cook County and as such Circuit Court of Cook County Clerk is vicariously liable for their acts and/or omissions that proximately caused Defendant's unlawful seizure of property, wrongful use of civil proceedings, and abuse of process.

5. On November 4, 2021, May 25, 2021, June 9, 2021, Defendants Edward N. Robles failed to use due care and were grossly negligent, negligent, reckless, willful and wanton in the following particulars:

   a. Failing to follow proper protocol and procedures for due process and judicial proceeding;
   b. Failing to show up for court without notifying litigants;
   c. Failing to accept plaintiff's motions, affidavits and petitions;
   d. Failing to allow plaintiff a hearing and to be heard;

    e. Causing and allowing untrained employees judge to unlawfully seize the Plaintiff property;

    f. Causing and allowing untrained employees judge to treat plaintiff with prejudicial impartiality, and bias;

    g. Causing and allowing untrained employees judge to show favoritism;

    h. Causing and allowing untrained employees judge to belittle plaintiff due to her self represented litigant status and socioeconomic status;

    i. Causing and allowing untrained employees judge to belittle plaintiff by stating plaintiff's need to stop reading;

    j. Failing to use the appropriate process for fundamental fairness, ; and

    k. In such other particulars as may be shown at trial or ascertained in discovery.

6. All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of Illinois, as well as the Defendants' obligations and duties to Plaintiff.

7. On July 18, 2022, and August 4, 2022 Defendant Lynn Weaver Boyle failed to use due care and were grossly negligent, negligent, reckless, willful and wanton in the following particulars:

    a. Failing to follow proper protocol and procedures due process and judicial proceeding;

    b. Failing to accept plaintiff's motions, affidavits and petitions;

    c. Failing to allow plaintiff a hearing and to be heard;

    d. Causing and allowing untrained employees to unlawfully seize the Plaintiff property;

    e. Causing and allowing untrained employees judge to treat plaintiff with prejudicial impartiality, and bias;

    f. Causing and allowing untrained employees judge to show favoritism;

    g. Causing and allowing untrained employees judge to belittle plaintiff due to her self represented litigant status and socioeconomic status;

    h. Causing and allowing untrained employees judge to belittle plaintiff by stating plaintiff's pleadings are frivolous;

    i. Failing to use the appropriate process for fundamental fairness; and

    j. In such other particulars as may be shown at trial or ascertained in discovery.

8. All of the above referenced acts and/or omissions and/or commissions are in violation of the common laws and statutes of the State of Illinois, as well as the Defendants' obligations and duties to Plaintiff.

## COUNT ELEVEN- NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANTS ERNEST J CODILIS, MARICLARE O'CONNOR, CODILIS &ASSOCIATES, SENIJIC GEBOVIC, GRANT LAW LLC., AND JPMORGAN CHASE BANK NATIONAL ASSOCIATION
### (STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS)

1. Plaintiff realleges and reincorporate all preceding paragraphs as if fully set forth herein.

2. Plaintiffs are informed and believe the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their attorney duties and to ensure their conduct conformed to generally accepted truthfulness in statement and candor to the Circuit Court of Cook County standards.

3. Plaintiffs are informed and believe the Defendants owed a duty to the public in general and to the Plaintiff in particular to use due care in fulfilling their fairness to the opposing party and judicial duties and to ensure their conduct conformed to generally accepted due process of law standards.

4. Plaintiffs are informed and believe that at all times relevant hereto Defendant Ernest J. Codilis and MariClare O'Connor were the attorneys of Codilis & Associates P.C., and representatives of JPMorgan Chase Bank National Association and as such Codilis & Associates P.C., and JPMorgan Chase Bank is vicariously liable for their acts and/or omissions that proximately caused Defendant's unlawful seizure of property, wrongful use of civil proceedings, and abuse of process.

5. Plaintiffs are informed and believe that at all times relevant hereto Defendant Senija Grebovic and Maurice Grant were the attorneys of Grant Law LLC., and representatives of JPMorgan Chase Bank National Association and as such Grant Law LLC., and JPMorgan Chase Bank is vicariously liable for their acts and/or omissions that proximately caused Defendant's unlawful seizure of property, wrongful use of civil

proceedings, and abuse of process.

6.  On August 21, 2019 and August 23, 2019, Defendants Ernest J. Codilis, Codilis &

Associates P.C. and JPMorgan Chase Bank National Association failed to use due care and

were grossly negligent, negligent, reckless, willful and wanton in the following

particulars:

   a.  Failing to follow proper protocol and procedures for due process;
   b.  Failing to verify a complete mortgage was included in their 2019CH09659 case;
   c.  Failing to verify pleading and correct legal address before filing 2019CH09659;
   d.  Causing and allowing untrained employees to unlawfully seize the Plaintiff property;
   e.  Failing to use the appropriate process for serving the plaintiff; and
   f.  In such other particulars as may be shown at trial or ascertained in discovery.

7.  On October 10, 2019, Defendants MariClare O'Connor failed to use due care and

were grossly negligent, negligent, reckless, willful and wanton in the following

particulars:

   a.  Failing to follow proper protocol and procedures for recording a mortgage;
   b.  Failing to obtain a signature from the plaintiff before recording the mortgage;
   c.  Failing to obtain a judge's order to record a mortgage while participating in 2019Ch09659;
   d.  Causing and allowing untrained employees to unlawfully seize the Plaintiff property;
   e.  Causing and allowing untrained attorneys to record unauthorized imposter mortgage filings with the Cook County Recorder of Deeds;
   f.  Failing to train employees attorneys to record a mortgage with (765 ILCS 77/70) Sec. 70. Predatory lending database program, the required Illinois Anti-Predatory Lending Database Program Certificate of Exemption
   g.  Failing to use the appropriate recording process for conveyances per (765 ILCS 5/9); and
   h.  In such other particulars as may be shown at trial or ascertained in discovery.

8.  On October 20, 2021, Defendants Ernest J. Codilis, Codilis & Associates, and

JPMorgan Chase Bank National Association failed to use due care and were grossly

negligent, negligent, reckless, willful and wanton in the following particulars:

   a. Failing to follow proper protocol and procedures for honesty, integrity, and truthfulness in pleadings;

   b. Failing to follow proper protocol and procedures for adding additional pages that were not in the original complaint 2019CH09659;

   c. Causing and allowing untrained employees attorneys to interfere with the course of justice and abusing the judicial process;

   d. Causing and allowing untrained employees to unlawfully seize the Plaintiff property;

   e. Failing to use the appropriate recording process for conveyances; and

   f. In such other particulars as may be shown at trial or ascertained in discovery.

9. On July 18, 2022, and August 4, 2022 Defendants Senija Grebovic, Maurice Grant,

Grant Law LLC., and JPMorgan Chase Bank National Association failed to use due

care and were grossly negligent, negligent, reckless, willful and wanton in the

following particulars:

   a. Failing to follow proper protocol and procedures for judicial integrity;

   b. Failing to verify a complete mortgage was included in their 2019CH09659 case;

   c. Failing to verify pleading and correct legal address before filing 2019CH09659;

   d. Causing and allowing untrained employees to unlawfully seize the Plaintiff property;

   e. Failing to use the appropriate process for serving the plaintiff; and

   f. In such other particulars as may be shown at trial or ascertained in discovery.

10. All of the above referenced acts and/or omissions and/or commissions are in violation

of the common laws and statutes of the State of Illinois, as well as the Defendants'

obligations and duties to Plaintiff.

## COUNT TWELVE- VIOLATION OF PLAINTIFF'S CIVIL RIGHTS BY COOK COUNTY RECORDER OF DEEDS- CUSTOM AND POLICY *(42 U.S.C. 1983)*

1. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

2. Defendant Karen A. Yarbrough is the Cook County Recorder of Deeds Clerk is upon information and belief is part of the Cook County Clerk's Recordings Division where they accurately records, stores and maintains land records and other official documents.

3. Further, this Defendant was elected into office, hired, retained, compensated and directed duly licensed recorder who were trained as recorder of deeds and who derive their powers from the State of Illinois.

4. By undertaking this important role this Defendant had a duty to use reasonable care and to safeguard the constitutional rights of the public at large and Plaintiff Renee A. Washington in particular.

5. Upon information and belief and as the Cook County Recorder of Deeds Clerk for the Cook County and its officers, this Defendant acted with reckless and deliberate indifference to Plaintiffs civil rights, in that, as a matter of policy and custom, they failed to adequately discipline, train, investigate, supervise or otherwise direct the Cook County Recorder of Deeds directly, concerning the civil rights of the citizens they exercised powers over.

6. Further, this Defendant was negligent or otherwise failed to meet its duties, non-delegable and otherwise, which it owed to Plaintiff. in that Defendant and/or its real and/or apparent agents, did or failed to do one or more of the following acts of omission or commission, any or all of which were departures from the prevailing standard of care:

   a.      Defendant failed to properly train Cook County Recorder of deeds employees in the appropriate way to certify and record unsigned mortgages;

   b. Defendant failed to properly supervise employees;

   c. Defendant was deliberately indifferent to the fact that Defendant Karen A. Yarbrough did not possess the requisite experience in recording mortgages duties a reasonable recorder should have prior to active recording and certifying of mortgages, which should give rise to increased supervision and training;

   d. Defendant failed to properly supervise its employees and agents during the relevant time period up to and including Plaintiffs seizure of property without a warrant via an unsigned mortgage despite notice to fraud review that the recorder were engaged in unreasonable behavior; and

   e. As well as any and all further particulars which may be demonstrated at trial.

7. At all times relevant hereto, Karen A. Yarbrough Cook County Recorder of Deeds knew or should have known that its failure to provide adequate training and supervision to its employees on the use of appropriate policy action during encounters with the public, and in particular at the Cook County Recorder of Deeds fraud review, would result in serious injury and violations of plaintiff's constitutional rights under the color of law.

8. Defendant Clerk of Cook County Iris Martinez and Cook County Recorder of Deeds is vicariously liable for the tortious acts of its employees that were committed within the course and scope of their employment and further is liable for its own independent acts of negligence and gross negligence.

9. As a direct and proximate result of the acts of Defendant through its employees, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages and such other and further relief as this honorable Court and the jury deem just and proper.

## COUNT THIRTEEN- VIOLATION OF PLAINTIFF'S CIVIL RIGHTS BY CIRCUIT COURT OF COOK COUNTY- CUSTOM AND POLICY *(42* U.S.C. 1983)

1. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

2. Defendant Circuit Court of Cook County is upon information and belief a judicial court in Cook County, Illinois and the court's supervisory authority is conferred by the Illinois Constitution, and is a general and comprehensive power to keep lower courts "within the bounds of their authority."

3. Further, this Defendant Circuit Court of Cook County Chief Judge Timothy Evans hired, retained, compensated and directed duly licensed judges who were trained by the various law schools, are judges who derive their judicial powers from the State of Illinois.

4. By undertaking this important role this Defendant had a duty to use reasonable care and to safeguard the constitutional rights of the public at large and Plaintiff Renee A. Washington in particular.

5. Upon information and belief and as the Chief Judge for the Circuit Court of Cook County and its judges, this Defendant acted with reckless and deliberate indifference to Plaintiffs civil rights, in that, as a matter of policy and custom, they failed to adequately discipline, train, investigate, supervise or otherwise direct the Circuit Court of Cook County, and judges Edward N. Robles and Lynn Weaver Boyle directly, concerning the civil rights of the citizens they exercised judicial powers over.

6. Further, this Defendant was negligent or otherwise failed to meet its duties, non-delegable and otherwise, which it owed to Plaintiff, in that Defendant and/or its real and/or apparent agents, did or failed to do one or more of the following acts of omission or commission, any or all of which were departures from the prevailing standard of care:

a.       Defendant failed to properly train Circuit Court of Cook County judges in the appropriate use of equality, fairness and equal justice under the law;

b. Defendant failed to properly supervise judges;

c. Defendant was deliberately indifferent to the fact that Defendant Edward N. Robles and Lynn Weaver Boyle did not possess the requisite experience in judicial work a reasonable judge should have prior to active impartial and unbiased judicial duties of the Circuit Court of Cook County, which should give rise to increased supervision and training;

d. Defendant failed to properly supervise its employees and agents during the relevant time period up to and including Plaintiffs seizure of property without a warrant despite notice that the judges were engaged in unreasonable behavior; and

e. As well as any and all further particulars which may be demonstrated at trial.

7. At all times relevant hereto, Circuit Court of Cook County knew or should have known that its failure to provide adequate training and supervision to its judges on the use of appropriate policy action during encounters with the public, and in particular at the Circuit Court of Cook County, would result in serious injury and violations of constitutional rights under the color of law.

8. Defendant Circuit Court of Cook County is vicariously liable for the tortious acts of its employees judges that were committed within the course and scope of their employment and further is liable for its own independent acts of negligence and gross negligence.

9. As a direct and proximate result of the acts of Defendant through its employees, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages and such other and further relief as this honorable Court and the jury deem just and proper.

## COUNT FOURTEEN- VIOLATION OF PLAINTIFF'S CIVIL RIGHTS BY JPMORGAN CHASE BANK NATIONAL ASSOCIATION, ERNEST J CODILIS, CODILIS & ASSOCIATES P.C., MARICLARE O'CONNOR, SENIJA GREBOC, MAURICE GRANT, GRANT LAW LLC.- CUSTOM AND POLICY (42 U.S.C. 1983)

1. Plaintiff realleges and reincorporates all preceding paragraphs as if fully set forth herein.

2. Defendant JPMorgan Chase Bank National Association is upon information and belief a is a banking Corporation with a principal place of business at 1111 POLARIS PARKWAY, COLUMBUS OH 43240 and JPMorgan Chase & Co. is a bank and financial services holding company headquartered in New York City.

Defendant JPMorgan Chase Bank National Association, is a National Financial Services Organization, an Agent of JPMorgan Chase Bank,. Plaintiff is informed and believes, and thereon alleges that (Chase) is a debt collector as defined by 15 U.S.C. § 1692 et seq.

3. Upon information and belief and defendant Codilis & Associates, P.C., is a "Debt Collector" as defined by 15 U.S.C. § 1692 et seq, and/or as identified in its foreclosure documents, whose principal place of business is 15W030 North Frontage Road, Burr Ridge, Illinois 60527; and doing business in Cook County, State of Illinois. All of Codilis & Associates P.C. correspondence state "The law firm representing the plaintiff does not have a license to collect mortgage payments or to be a debt collector". MariClare O'Connor and Ernest J. Codilis are attorneys at Codilis & Associates former attorney representatives of JPMorgan Chase Bank National Association.

4. Upon information and belief and defendant Grant Law LLC. is a "Debt Collector" as defined by 15 U.S.C. § 1692 et seq. Senija Grebovic and Maurice Grant are attorneys and the current attorney representatives for JPMorgan Chase Bank National Association.

5. By undertaking this important role this Defendant had a duty to use reasonable care and to safeguard the constitutional rights of the public at large and Plaintiff Renee A. Washington in particular.

6. Upon information and belief and as the JPMorgan Chase Bank National Association for the 2019CH09659 and its attorneys' officers of the court, this Defendant acted with reckless and deliberate indifference to Plaintiffs civil rights, in that, as a matter of policy and custom, they failed to adequately discipline, train,

investigate, supervise or otherwise direct the attorneys officers of the court, directly, concerning the civil rights of the citizens they exercised judicial powers over.

7. Further, this Defendant was negligent or otherwise failed to meet its duties, non-delegable and otherwise, which it owed to Plaintiff. in that Defendant and/or its real and/or apparent agents, did or failed to do one or more of the following acts of omission or commission, any or all of which were departures from the prevailing standard of care:

a. Defendant failed to properly train attorneys officer of the court in the appropriate use verification of pleadings, integrity, judicial honesty and recording of mortgages without a signature;

b. Defendant failed to properly supervise attorneys' officers of the court;

c. Defendant was deliberately indifferent to the fact that Defendant MariClare O'Connor, Ernest J Codilis, Codilis & Associates P.C., Senija Grebovic, Maurice Grant and Grant Law LLC. did not possess the requisite experience in legal field work a reasonable attorney officer of the court should have prior to active judicial proceeding of Circuit Court of Cook County, which should give rise to increased supervision and training;

d. Defendant failed to properly supervise its employees and agents during the relevant time period up to and including Plaintiffs seizure of property without a signature, despite notice that the attorneys' officers of the court were engaged in unreasonable behavior; and

e. As well as any and all further particulars which may be demonstrated at trial.

8. At all times relevant hereto, JPMorgan Chase Bank National Association, Codilis & Associates, and Grant Law LLC. knew or should have known that its failure to

provide adequate training and supervision to its attorneys' officers of the court on the use of appropriate policy action during encounters with the public, and in particular at the Circuit Court of Cook County and the Cook County Recorder of Deeds, would result in serious injury and constitutional violations.

9. Defendant JPMorgan Chase Bank National Association, Codilis & Associates P.C., and Grant Law LLC. is vicariously liable for the tortious acts of its employees that were committed within the course and scope of their employment and further is liable for its own independent acts of negligence and gross negligence.

10. As a direct and proximate result of the acts of Defendant JPMorgan Chase Bank National Association, Codilis & Associates P.C., and Grant Law LLC. through its employees, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages and such other and further relief as this honorable Court and the jury deem just and proper.

## COUNT FIFTEEN- WRONGFUL USE OF CIVIL PROCEEDINGS AND ABUSE OF PROCESS BY ALL DEFENDANTS
## STATE LAW CLAIM PURSUANT TO THE COMMON LAW OF ILLINOIS

1. Plaintiff reincorporates and realleges all preceding paragraphs as if fully set forth herein.

2. Defendant's conduct of seizing Plaintiff property without a warrant, recording a mortgage without plaintiff's signature, knowledge or consent, forging a mortgage, tampering with public records, certifying a mortgage, recording and suing on a mortgage with an incorrect legal address, recording abuse, judicial abuse, legal abuse, abuse of process, attempting service on plaintiff at an address she does not live at, placing her in judicial partiality, judicial bias, detaining her in court with dishonest pleadings, deprived Plaintiff of her liberty

without justification.

3. Defendants and their employees, agents, and/or contractors intentionally seized Plaintiff property without a warrant and without due process.

4. There was no lawful basis for Defendant's recording of mortgage without her signature and denying her equal rights to justice to defend herself.

5. As a direct and proximate result of Defendant's false seizure of Plaintiff's property, Plaintiff has suffered and continues to suffer tremendous and irreparable emotional and mental harm and is entitled to actual and punitive damages.

**WHEREFORE,** Plaintiffs pray for a trial by jury and for the following:

1. For a judgment against the Defendants, jointly and severally, for violating the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution as set forth in this Complaint;

11. Judgment against Defendants, jointly and severally, for actual and punitive damages in the amount to be determined by the jury;

111. To award Plaintiffs reasonable legal fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law;

1v. For all other and further relief as this Court deems just and proper.

August 18, 2022

Respectfully submitted,

By: _Renee A. Washington_

Without prejudice UCC 1-308
Renee A. Washington/Propria Persona
567 Merrill Ave
Calumet City, IL 60409
708-567-3410

renee101@sbcglobal.net

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, as to such matters the undersigned certifies as aforesaid he/she verily believes the same to be true.

Date 8-8-2022

Subscribed and sworn to before me this _____ 8 _____ day of _____ August _____, 20 22

Notary/Clerk

Signature

"OFFICIAL SEAL"
BLEVIAN T. MOORE
Notary Public, State of Illinois
My Commission Expires 07/25/22

By: _____

Without prejudice UCC 1-308
Renee A. Washington/Propria Persona
567 Merrill Ave
Calumet City, IL 60409
708-567-3410
renee101@sbcglobal.net

Exhibit List

A. Affidavit Scrivener's of Error – mortgage without plaintiff signature, page 3 of 16 and page 4 of 16 recorded.

PREPARED BY & MAIL TO:

MariClare O'Connor
Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300

14-19-07590



Doc# 1928306097 Fee $88.00

RHSP FEE:$9.00 RPRF FEE: $1.00
EDWARD M. MOODY
COOK COUNTY RECORDER OF DEEDS
DATE: 10/10/2019 12:25 PM PG: 1 OF 5

---

Above Space for Recorder's Use Only

## AFFIDAVIT OF SCRIVENER'S ERROR

MariClare O'Connor, being first duly sworn upon oath and affirmation, hereby state that I have personal
knowledge of the contents of this affidavit and the authority to sign said affidavit on behalf of Codilis &
Associates:

1. A certain Mortgage was recorded 9/21/2011 as Instrument Number 1126408052.

2. ~~The legal description in the aforementioned deed contained a minor scrivener's error in said deed as it contained~~ The mortgage contained a minor scrivener's error in that the document was originally recorded without pages 3 and 4.

3. Pages 3 and 4 are attached.

4. Legal is attached on a separate page.

5. Further affiant says not.

MariClare O'Connor
Attorney at Law

Mariclare O'Connor
ARDC # 6202416

STATE OF ILLINOIS

COUNTY OF DUPAGE

I, the undersigned, a Notary Public in and for the said County, in the State aforesaid, do hereby certify
that MariClare O'Connor who is personally known to me to be the same person whose name is subscribed
to the foregoing instrument, appeared before me this day in person and acknowledged that he signed,
sealed and delivered the said instrument as his free and voluntary act as such for the uses and purposes
therein set forth.

Given under my hand and
official seal, this 9th day
of October, 2019,

Notary Public

IMPRESS SEAL
HERE

OFFICIAL SEAL
RHONDA WEINS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/02/22

S
P 5
S
M
SC
E
INT

## LEGAL DESCRIPTION

LOT 29 IN BLOCK 8 IN G. FRANK CROISSANT'S SHADOW LAWN, A SUBDIVISION OF THAT
PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4 AND THE EAST THIRD OF THE EAST 1/2
OF THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 36 NORTH, RANGE 14, EAST OF
THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CENTER LINE OF MICHIGAN
CITY ROAD, IN COOK COUNTY, ILLINOIS.

Address commonly known as:
567 Merrill Avenue
Calumet City, IL 60409

PIN#:  29-12-314-011-0000

RECORD COOK COUNTY
OF DEEDS

RE COOK COUNTY
OF DEEDS

I CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY
OF DOCUMENT # 1126408052

OCT -2 19

RECORDER OF DEEDS
COOK COUNTY
Office DT by

following described property located in the COUNTY [Type of Recording Jurisdiction] of Cook [Name of Recording Jurisdiction]: See Attached

Parcel ID Number: 29123140110000, 29123140110000 which currently has the address of 567 MERRILL AVE [Street] CALUMET CITY [City], Illinois 60409 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**Uniform Covenants.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

201109094.0.0.0.4002-J20101203Y

Initials: RAW

1632148934
Form 3014 1/01
10/10
Page 3 of 16

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

201109094.0.0.0.4002-J20101203Y

Initials: _RAW_

Form 3014 1/01
10/10
Page 4 of 16

1632148834

I CERTIFY THAT THIS
IS A TRUE AND CORRECT COPY

1728306097

COOK COUNTY CLERK

B. Mortgage – factual page numbers are in the lower right, page 3 of 16 and page 4 of 16 are missing.

Doc#: 1126408052 fee: $76.00
Date: 09/21/2011 08:08 AM Pg: 1 of 16
Cook County Recorder of Deeds
RHSP FEE $10.00 Applied

Illinois Anti-Predatory
Lending Database
Program

Certificate of Exemption

Report Mortgage Fraud
800-532-8785

The property identified as:    PIN: 29-12-314-011-0000

Address:
Street:    567 Merrill Avenue
Street line 2:
City: Calumet City    State: IL    ZIP Code: 60409

Lender: JPMorgan Chase Bank N.A.

Borrower: Renee A. Washington

Loan / Mortgage Amount: $86,660.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

Certificate number: 6B6EEC53-63E3-4287-97D0-2B2001551560    Execution date: 09/12/2011

Old Republic National Title Insurance Company
20 South Clark Street
Suite 2000
Chicago, IL 60603

**Return To:** JPMorgan Chase Bank, N.A.
Collateral Trailing Documents
P.O. Box 8000 - Monroe, LA 71203

**Prepared By:** Rosalind Perry
3050 Highland Pkwy
Downers Grove, IL 60515

1124425 1/1          # Mortgage

**Definitions.** Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) *"Security Instrument"* means this document, which is dated September 12, 2011, together with all Riders to this document.

(B) *"Borrower"* is RENEE A WASHINGTON, an unmarried woman. Borrower is the mortgagor under this Security Instrument.

(C) *"Lender"* is JPMorgan Chase Bank, N.A.. Lender is a National Banking Association organized and existing under the laws of the United States. Lender's address is 1111 Polaris Parkway, Columbus, OH 43240 . Lender is the mortgagee under this Security Instrument.

(D) *"Note"* means the promissory note signed by Borrower and dated September 12, 2011. The Note states that Borrower owes Lender eighty six thousand six hundred sixty and 00/100 Dollars (U.S. $86,660.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2041.

(E) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

(F) *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider          ☐ Second Home Rider

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                    201109094.0.0.0.4C02-J20101203Y          Initials: _____

1632148934
Form 3014 1/01
10/10
Page 1 of 16

☐ Balloon Rider      ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider        ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

**(H)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** *"Escrow Items"* means those items that are described in Section 3.

**(L)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** *"RESPA "* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services      201109064.0.0.0.4002-J20101203Y

1632148534
Form 3014 1/01
10/10
Initials:  Page 2 of 16

*RTL1632148341123*

require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                    201109094.0.0.0.4002-J20101203Y

Initials: _S.A.U._

1632148934
Form 3014 1/01
10/10
Page 5 of 16

*RTL1632148934*123*

other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                           201109094.0.0.0.4002-J20101203Y

1632148934
Form 3014 1/01
10/10
Initials: _____ Page 6 of 16

*RTL1632148934112*

due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services          201109094.0.0.0.4002-J20101203Y          Initials: _____          1632148934
Form 3014 1/01
10/10
Page 7 of 16

Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services          201109094.0.0.0.4002-J20101203Y



1632148534
Form 3014 1/01
10/10
Initials: _____ Page 6 of 16

*RTL1632148534112Y*

Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs *and restoration in a single disbursement or in a series* of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services     201109094.0.0.0.4002-J20101203Y



1632148934
Form 3014 1/01
10/10
Initials: _____ Page 9 of 16

*RT( 1632148934 1123*

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                201109094.0.0.0.4002-J20101203Y

Initials: _R.A.U_

1632148934
Form 3014 1/01
10/10
Page 10 of 16

any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                201109094.0.0.0.4002-J20101203Y

1632148934
Form 3014 1/01
10/10
Initials: R.A.W.    Page 11 of 16

There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c)

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                    201109054.0.0.0.4002-J20101203Y

1832148934
Form 3314 1/01
10/10
Initials: _____ Page 12 of 16

*RTL1832148934J123*

pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such *reinstatement sums and expenses in one or more of the following forms, as selected by Lender:* (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                                        201109094.0.0.0.4002-J20101203Y

Initials: _R.A.W._

1632148934
Form 3014 1/01
10/10
Page 13 of 16

"Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services                    201109094.0.0.0.4002-J20101203Y

1632148934
Form 3014 1/01
10/10
Page 14 of 16

Initials: A.H.W.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

RENEE A WASHINGTON

9/2/11
Date
*Seal*

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

201109094.0.0.0.4002-J20101203Y



Initials: _____

1632146934
Form 3014 1/01
10/10
Page 15 of 16

Acknowledgment

State of Illinois

County of Cook

This instrument was acknowledged before me on _September 12, 2016_ by

_Renee A. Washington_

_Notary Public_

My commission expires: _12/29/14_

(Seal)

"OFFICIAL SEAL"
DIEDRE S. BROWN
Notary Public, State of Illinois
My Commission Expires 12/29/14

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services          201109034.0.0.0.4002-J20101203Y                    Initials: _____

163214B934
Form 3014 1/01
10/10
Page 16 of 16

*RTL163214B934123*

## LEGAL DESCRIPTION

LOT 29 IN BLOCK 8 IN G. FRANK CROISSANT'S SHADOW LAWN, A SUBDIVISION OF THAT PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4 AND THE EAST THIRD OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 36 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CENTER LINE OF MICHIGAN CITY ROAD, IN COOK COUNTY, ILLINOIS.

Address commonly known as:
567 Merrill Avenue
Calumet City, IL 60409

PIN#:  29-12-314-011-0000

CERTIFY THAT THIS
IS CORRECT COPY

C. Complaint To Foreclose Mortgage – page 3 of 16 and page 4 of 16 are missing factual page numbers are in the lower right.

Hearing Date: 10/21/2019 9:45 AM - 9:45 AM
Courtroom Number: 2804
Location: District 1 Court
    Cook County, IL

FILED
3/21/2019 11:28 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH09659
6267259

Cook County #21762

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

JPMorgan Chase Bank, National Association
             PLAINTIFF

Vs.

Renee A. Washington; Chicago Title Land Trust
Company, as Trustee a/k/a Trust No. 8002361708;
Unknown Owners and Nonrecord Claimants
           DEFENDANTS

No.  **2019CH09659**

567 Merrill Ave
Calumet City, IL 60409

## COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, by and through its attorneys, CODILIS & ASSOCIATES, P.C., complaining of the defendants herein and, pursuant to 735 ILCS 5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and joins the following persons as "Defendants": Renee A. Washington; Chicago Title Land Trust Company, as Trustee a/k/a Trust No. 8002361708; Unknown Owners and Nonrecord Claimants

2. Attached as "EXHIBIT A" is a copy of the Mortgage. Attached as "EXHIBIT B" is a copy of the Note.

3. Information concerning said Mortgage:

    (A) Nature of the instrument:  Mortgage.

    (B) Date of the Mortgage:  9/12/2011

    (C) Name of mortgagor(s):

        Renee A. Washington

    (D) Name of the original mortgagee:

        JPMorgan Chase Bank, N.A.

    (E) Date and Place of Recording or Registering:

        9/21/2011

FILED DATE: 8/21/2019 11:28 AM  2019CH09659

Office of the Recorder of Deeds of Cook County Illinois

(F) Identification of Recording: Document No. 1126408052

(G) Interest subject to the mortgage: Fee Simple.

(H) Amount of original indebtedness:

(1) Original Indebtedness: $86,660.00

(I) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 29 IN BLOCK 8 IN G. FRANK CROISSANT'S SHADOW LAWN, A SUBDIVISION OF THAT PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4 AND THE EAST THIRD OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 36 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CENTER LINE OF MICHIGAN CITY ROAD, IN COOK COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:**     567 Merrill Ave
Calumet City, IL 60409

**TAX PARCEL NUMBER:** 29123140110000

(J) Statement as to defaults: Mortgagors have not paid the monthly installments of Principal, taxes, Interest and insurance for 04/01/2019, through the present; the Principal balance due on the Note and the Mortgage is $74,102.71, plus Interest, costs, advances and fees. Interest accrues pursuant to the Note, and the current per diem is $9.90.

(K) Name of present owner(s) of said premises:
Chicago Title Land Trust Company, as Trustee a/k/a Trust No. 8002361708

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

(M) Names of defendants claimed to be personally liable for deficiency, if any:

Renee A. Washington.

No personal deficiency will be sought against this(these) defendant(s) if they are protected by a bankruptcy automatic stay or if their obligation is discharged in bankruptcy.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the Mortgagee under 735 ILCS 5/15-1208.

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

FILED DATE: 8/21/2019 11:28 AM   2019CH09659

FILED DATE: 8/21/2019 11:28 AM   2019CH09659

(P)  Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q)  Facts in support of request for attorneys' fees and of costs and expenses, if applicable:  The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default under the mortgage.

(R)  Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

(S)  Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T)  Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Renee A. Washington; Chicago Title Land Trust Company, as Trustee a/k/a Trust No. 8002361708;

4.  Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Unknown Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

## WHEREFORE, THE PLAINTIFF REQUESTS:

(i)     A judgment of foreclosure and sale.

(ii)    An order granting a shortened redemption period, if sought.

(iii)   A personal judgment for deficiency, if applicable and sought, and only against parties who have signed the Note or monetary obligation which is the subject matter of this complaint, or persons who have assumed liability of the Note or monetary obligation which is the subject matter of this complaint, and who have not received a discharge of this debt in bankruptcy and who are not personally protected by the automatic stay at sale confirmation.

(iv)   An order granting possession, if sought.

(v)     An order placing the mortgagee in possession or appointing a receiver, if sought.

(vi)    A judgment for attorneys' fees, costs and expenses, if sought.

(vii)   For the appointment of a Selling Officer, if deemed appropriate by this court.

(viii)  Such other and further relief as this court deems just.


JPMorgan Chase Bank, National Association

BY: /s/ Anna David
       ARDC No. 6285903
          CODILIS & ASSOCIATES, P.C.
          One of its Attorneys


Codilis & Associates, P.C.
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
pleadings@il.cslegal.com
Cook #21762
14-19-07590
**NOTE: This law firm is a debt collector.**

FILED DATE: 8/21/2019 11:28 AM   2019CH09659

FILED DATE: 8/21/2019 11:28 AM   2019CH09659



**PERSONAL INFORMATION REDACTED**

Doc#. 1126408052 fee: $76.00
Date: 09/21/2011 08:08 AM Pg: 1 of 16
Cook County Recorder of Deeds
*RHSP FEE $10.00 Applied

| Illinois Anti-Predatory Lending Database Program | |
|---|---|
| **Certificate of Exemption** | |
| **Report Mortgage Fraud**<br>800-532-8785 | |

| The property identified as: | PIN: 29-12-314-011-0000 | |
|---|---|---|
| **Address:** | | |
| **Street:** 567 Merrill Avenue | | |
| **Street line 2:** | | |
| **City:** Calumet City | **State:** IL | **ZIP Code:** 60409 |

**Lender:** JPMorgan Chase Bank N.A.

**Borrower:** Renee A. Washington

**Loan / Mortgage Amount:** $85,660.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity.

| **Certificate number:** | **Execution date:** 09/12/2011 |
|---|---|

FILED DATE: 8/21/2019 11:28 AM   2019CH09659

Old Republic National Title Insurance Company
20 South Clark Street
Suite 2000
Chicago, IL 60603

Return To: JPMorgan Chase Bank, N.A.
Collateral Trailing Documents
P.O. Box 8000 - Monroe, LA 71203

Prepared By: Rosalind Perry
3050 Highland Pkwy
Downers Grove, IL 60515

# Mortgage

**Definitions.** *Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.*

(A) *"Security Instrument"* means this document, which is dated September 12, 2011, together with all Riders to this document.

(B) *"Borrower"* is RENEE A WASHINGTON, an unmarried woman. Borrower is the mortgagor under this Security Instrument.

(C) *"Lender"* is JPMorgan Chase Bank, N.A.. Lender is a National Banking Association organized and existing under the laws of the United States. Lender's address is 1111 Polaris Parkway, Columbus, OH 43240 . Lender is the mortgagee under this Security Instrument.

(D) *"Note"* means the promissory note signed by Borrower and dated September 12, 2011. The Note states that Borrower owes Lender eighty six thousand six hundred sixty and 00/100 Dollars (U.S. $86,660.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than October 1, 2041.

(E) *"Property"* means the property that is described below under the heading "Transfer of Rights in the Property."

(F) *"Loan"* means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) *"Riders"* means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider     ☐ Second Home Rider

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

☐ Balloon Rider      ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider          ☐ Biweekly Payment Rider      ☐ Other(s) [specify]

**(H)** *"Applicable Law"* means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I)** *"Community Association Dues, Fees, and Assessments"* means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J)** *"Electronic Funds Transfer"* means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K)** *"Escrow Items"* means those items that are described in Section 3.

**(L)** *"Miscellaneous Proceeds"* means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M)** *"Mortgage Insurance"* means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N)** *"Periodic Payment"* means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O)** *"RESPA"* means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, RESPA refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P)** *"Successor in Interest of Borrower"* means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**Transfer of Rights in the Property.** This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

FILED DATE: 8/21/2019 11:28 AM 2019CH09659

1126408052 Page: 4 of 16

require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFOR
VMP®
Wolters Kluwer Financial Services



other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFO
VMP®
Wolters Kluwer Financial Services



FILED DATE: 8/21/2019 11:26 AM    2019CH09659

due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM II
VMP®
Wolters Kluwer Financial Services



Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services



FILED DATE: 8/21/2019 11:28 AM    2019CH09659

Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

*Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.*

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(A) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(B) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

1126408052 Page: 9 of 16

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services



any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM I
VMP®
Wolters Kluwer Financial Services



There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c)

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective *as if no acceleration had occurred.* However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given *written* notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services



FILED DATE: 8/21/2019 11:28 AM   2019CH09659

FILED DATE: 8/21/2019 11:28 AM    2019CH09659

"Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**Non-Uniform Covenants.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.



ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

1126408052 Page: 14 of 16

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

**Borrower**

RENEE A WASHINGTON                          9/9/11
                                              Date
                                              Seal

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®
Wolters Kluwer Financial Services

1126408052 Page: 15 of 16

FILED DATE: 8/21/2019 11:28 AM   2019CH09659

**Acknowledgment**

**State of Illinois**

**County of Cook**

This instrument was acknowledged before me on _September 12, 2018_ by

Renee A. Washington

_____
*Notary Public*
*My commission expires:* 12/29/19
(Seal)

"OFFICIAL SEAL"
DIEDRE S. BROWN
Notary Public, State of Illinois
My Commission Expires 12/29/14

ILLINOIS-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

1126408052 Page: 16 of 16

FILED DATE: 8/21/2019 11:28 AM 2019CH09659

## LEGAL DESCRIPTION

LOT 29 IN BLOCK 8 IN G. FRANK CROISSANT'S SHADOW LAWN, A SUBDIVISION OF THAT PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4 AND THE EAST THIRD OF THE EAST 1/2 OF THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 36 NORTH, RANGE 14, EAST OF THE THIRD PRINCIPAL MERIDIAN, LYING NORTH OF THE CENTER LINE OF MICHIGAN CITY ROAD, IN COOK COUNTY, ILLINOIS.

Address commonly known as:
567 Merrill Avenue
Calumet City, IL 60409

PIN#:  29-12-314-011-0000



**EXHIBIT B**



PERSONAL INFORMATION REDACTED

## Note

September 12, 2011        CALUMET CITY        IL
[Date]                    [City]              [State]

 

567 MERRILL AVE, CALUMET CITY, IL 60409
[Property Address]

**1. Borrower's Promise to Pay.** In return for a loan that I have received, I promise to pay U.S. $86,660.00 (this amount is called *"Principal"*), plus interest, to the order of the Lender. The Lender is JPMorgan Chase Bank, N.A.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the *"Note Holder"*.

**2. Interest.** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 4.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. Payments.**

    **(A) Time and Place of Payments.** I will pay principal and interest by making a payment every month.

    I will make my monthly payment on the 1st day of each month beginning on November 1, 2011. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2041, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the *"Maturity Date"*.

    I will make my monthly payments at P.O. Box 78420, Phoenix, AZ 85062-8420 or at a different place if required by the Note Holder.

    **(B) Amount of Monthly Payments.** My monthly payment will be in the amount of U.S. $458.62.

**4. Borrower's Right to Prepay.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a *"Prepayment"*. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. Loan Charges.** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. Borrower's Failure to Pay as Required.**

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac U
VMP®
Wolters Kluwer Financial Services

FILED DATE: 8/21/2019 11:28 AM   2019CH08659

**(A) Late Charge for Overdue Payments.** If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default.** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder.** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses.** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. Giving of Notices.** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. Obligations of Persons Under This Note.** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. Waivers.** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. *"Presentment"* means the right to require the Note Holder to demand payment of amounts due. *"Notice of Dishonor"* means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. Uniform Secured Note.** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the *"Security Instrument"*), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM
VMP®
Wolters Kluwer Financial Services

FILED DATE: 8/21/2019 11:28 AM  2019CH09659

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Borrower

RENEE A WASHINGTON                    9/12/11
                                      Date
                                      Seal

Pay to the Order of:
Without Recourse
JPMorgan Chase Bank, N.A.
By: _____
LaTonya Hawkins, Assistant Secretary

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFC
VMP®
Wolters Kluwer Financial Services

D. Identity Theft Affidavit

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 63

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

FILED
7/12/2022 2:18 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2019CH09659
Calendar, 63
18638190

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

JPMORGAN CHASE BANK, N.A.

Plaintiff

VS.

Renee A. Washington, Chicago Title Land
Trust Company as Trustee a/k/a
Trust No. 8002361708
Defendant

Case No.:2019CH09659

CAL. 63
JUDGE LYNN WEAVER BOYLE

567 Merrill Ave
Calumet City, Il 60409

## AFFIDAVIT OF FORGERY AND IDENTITY THEFT

Now comes defendant and owner Renee A. Washington, Chicago Title Land Trust

Company as Trustee a/k/a Trust No. 8002361708, and Unknown Owners and Nonrecord

Claimants herein, ("Owners") by limited appearance to this matter in this court of record

with clean hands, without prejudice, with God given rights, God granted rights, Creator

endowed rights, and with all rights secured by the United States Constitution and the State

of Illinois Constitution invoked herein and no rights are voluntarily or involuntarily being

waived and with all rights reserved including UCC 1-308 in dealing with this court, in

Propria Persona, Sui Juris (not Pro Se). Defendant Renee A. Washington is before this

court by special appearance without waiving any rights, remedies or defenses, statutory or

procedural. Renee A. Washington solemnly affirms that the statements herein are true and

correct, in substance and in fact, to wit:

## AFFIDAVIT OF FORGERY AND IDENTITY THEFT

I, Renee A. Washington have examined my Cook County Recorder of Deeds chain of title

and found forged and identity theft documentation recordings to defendant's

PIN 29-12-314-011-0000 affecting title to defendant's property and 2019CH09659.

1

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

I Renee A. Washington further certify that: I am the owner of

LOT 29 IN BLOCK 8 IN G. FRANK CROISSANT'S SHADOW LAWN, BEING A
SUBDIVISION OF THAT PART OF THE WEST 1/2 OF THE SOUTHEAST 1/4 AND
THE EAST 1/3 OF THE EAST 1/2 OF THE SOUTHWEST 1/4, LYING NORTH OF
THE CENTER LINE OF MICHIGAN CITY ROAD IN SECTION 12 TOWNSHIP 36
NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK
COUNTY, ILLINOIS.

Commonly known as 567 Merrill Ave, Calumet City, IL 60409,

and I submit this Affidavit of Forgery and Identity Theft in support of all motions

submitted in 2019CH09659 case.

1.  My full legal name is Renee Annette Washington.

2.  When the forgery and identity theft took place, I was known as Renee A. Washington.

3.  My current address is 567 Merrill Ave, Calumet City, IL 60409.

4.  I Renee A. Washington have lived at this address since January 2000.

5.  My Chase Bank loan number is 1632148934.

6.  The forgery and identity theft took place at the Cook County Recorder of Deeds Office.

7.  The mortgage document/security instrument/contract #**1928306097** is forged.

8.  The mortgage document/security instrument/contract #**1928306097** is a forgery of
    mortgage document/security instrument/contract #**1126408052.**

9.  The mortgage document/security instrument/contract #**1928306097** has Renee A.
    Washington Chase Bank loan number 1632148934 in the lower right side of the
    document above my initial of R.A.W. See attached Certified Affidavit of Scrivener's
    Error Exhibit "A".

10. To the best of Renee A. Washington knowledge and belief, the following person
    MariClare O'Connor, Codilis & Associates P.C., and Plaintiff JPMorgan Chase Bank
    National Association used my name, address, Chase Bank mortgage account number

2

FILED DATE: 7/12/2022 2:18 PM    2019CH09659

and mortgage document/security instrument/contract #1126408052 and #1928306097

identification documents to steal equity to fraudulently foreclose on my property

without my consent, knowledge or authorization.

11. I Renee A. Washington have not authorized the forged and identity theft document

recording appearing on my **PIN 29-12-314-011-0000,**

~~cook.orcoll.cook.county.il.ifffn.gov.....default.aspx.~~ Specifically, the recording of

mortgage document/security instrument/contract #1928306097. The recording were

neither made by me, nor by any person with my knowledge, authorization or consent.

12. I Renee A. Washington have never received any benefit either directly or indirectly,

from the recording of mortgage document/security instrument/contract #1928306097.

13. I Renee A. Washington did not execute and sign or initial this mortgage

document/security instrument/contract #1928306097 page 3 of 16, page 4 of 16 with a

materially incorrect legal description in **front** of a notary Rhonda Weins on 10/09/2019

or 10/10/2019 or any other date.

14. Notary Rhonda Weins did not attest to the authenticity of Renee A. Washington

identity, signature or initials on 10/09/2019 or 10/10/2019 or any other date.

15. I Renee A. Washington did not execute a mortgage document/security

instrument/contract #1126408052 on **9/21/2011.**

16. I Renee A. Washington did not initial mortgage document/security instrument/contract

#1126408052 page 3 of 16 and page 4 of 16 on 10/09/2019 or 10/10/2019.

17. The mortgage document/security instrument/contract #1928306097 appears to have

Renee A. Washington initials of R.A.W. See attached Certified Affidavit of Scrivener's

Error Exhibit "A".

3

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

18. I Renee A. Washington do not know MariClare O'Connor.

19. I Renee A. Washington do not know notary Rhonda Weins.

20. I Renee A. Washington did not authorize or consent to Cook County Recorder of Deeds to certify this mortgage document/security instrument/contract **#1928306097** on 10/02/2019.

21. I Renee A. Washington did not authorize or consent to mortgage document/security instrument/contract **#1928306097** re-recording missing/unrecorded page 3 of 16, page 4 of 16 with a materially incorrect legal description of mortgage document **#1126408052.**

22. This mortgage document/security instrument/contract **#1928306097** was recorded 10/10/2019 after the initiation and recording of the Lis Pendens on 08/23/2019. Probably to ensure a successful foreclosure on mortgage document/security instrument/contract **#1126408052.**

23. The legal description in mortgage document/security instrument/contract **#1928306097** is materially incorrect. See attached Certified legal description. Exhibit "B".

24. The legal description in mortgage document/security instrument/contract **#1126408052** is materially incorrect. Factual page numbers are in the lower right of the document. See attached Certified mortgage document Exhibit "C".

25. Page 3 of 16 and page 4 of 16 are unrecorded in mortgage document/security instrument/contract **#1126408052.** Factual page numbers are in the lower right of the document. See attached certified mortgage document Exhibit "C"

26. This mortgage document/security instrument/contract **#1928306097** has my loan number 1632148934 in the lower right side of the document above my initial of

4

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

R.A.W.  See attached Certified Affidavit of Scrivener's Error Exhibit "A".

27. This mortgage document/security instrument/contract **#1928306097** has the words "security instrument" typed in ten different instances throughout the document.

28. This mortgage document/security instrument/contract **#1928306097** lacks the three essential elements listed below to make the mortgage contract valid.

   (A) the names of the "parties," and

   (B) the "subject matter," and

   (C) "consideration"

29. This mortgage document/security instrument/contract **#1928306097** lacks the three essential elements listed below to make the mortgage contract valid.

   (A) My name Renee A. Washington, my complete signature, and Chase Bank name.

   (B) My complete legal description.

   (C) Qui pro quo or something given for something received.

30. This mortgage document/security instrument/contract **#1928306097** lacks the proper requisites of a valid mortgage contract listed below:

   Definitions

   Uniform Covenants

   Transfer of Rights in the Property

   4. Charges; Liens

   5. Property Insurance

   6. Occupancy

   7. Preservation, Maintenance and Protection of the Property; Inspections

   8. Borrower's Loan Application

   9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.

   10. Mortgage Insurance

   11. Assignment of Miscellaneous Proceeds; Forfeiture

   12. Borrower Not Released; Forbearance By Lender Not a Waiver

5

FILED DATE: 7/12/2022 2:16 PM   2019CH09659

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound

14. Loan Charges

15. Notices

16. Governing Law; Severability Rules of Construction

17. Borrower's Copy

18. Transfer of the Property or a Beneficial Interest in Borrower

19. Borrower's Right to Reinstate After Acceleration

20. Sale of Note; Change of Loan Servicer; Notice of Grievance

21. Hazardous Substances

Non-Uniform Covenants

22. Acceleration; Remedies

23. Release

24. Waiver of Homestead

25. Placement of Collateral Protection Insurance

Borrower signature

Notary authentication acknowledgement

Correct legal description

31. This mortgage document/security instrument/contract #1928306097 lacks one of the

three essential elements of (2) the "subject matter." listed below to make the mortgage

contract valid.

(A) Correct legal description.

26. This mortgage document/security instrument/instrument #1928306097 does not meet

Illinois minimum statutory requirements for recordation.

27. This mortgage document/security instrument/contract #1928306097 lacks UCC 3-203,

3-201 negotiation, 3-204 indorsement, 3-301 person entitled to enforce instrument.

28. This mortgage document/security instrument/contract #1928306097 lacks compliance

with all applicable, federal, state and local laws and the language contained within the

Security Instrument itself.

6

FILED DATE: 7/12/2022 2:18 PM  2019CH09659

29. I Renee A. Washington did not attend a loan closing on October 9, 2019.

30. I Renee A. Washington did not receive a HUD-1 settlement statement per RESPA regulations on October 9, 2019.

31. I Renee A. Washington did not receive a 3-Day right to cancel on October 9, 2019 per the Truth in Lending Act regulations.

32. I agree to attest to the above facts in a court of law if so called up to do so.

33. Included is a copy of my State of Illinois Identification card with my signature. Exhibit "D'.

34. Included is a non-consent form. Exhibit "E".

35. Included is a sample signature form Exhibit "F".

36. Included is a copy of my filed report to the FTC Exhibit "G".

37. Included is a copy of my filed report to the FBI Exhibit "H".

38. I am willing to assist in the prosecution of the person who committed this fraud.

39. Affiant believes and is informed and declare that the above facts has violated the laws listed below which is not all inclusive:

a. Uniform Commercial Code unauthorized signature (810 ILCS 5/3-401) (a),
b. fraudulent alteration (810 ILCS 5/3-407) (a)(b)(c),
c. duress, illegality that renders the obligation void (810 ILCS 5/3-305) (a), fraud in the execution (810 ILCS 5/3-305)
d. (720 ILCS 5/17-3) (from Ch. 38, par. 17-3) Sec. 17-3. Forgery.
e. (720 ILCS 5/32-8) (from Ch. 38, par. 32-8) Sec. 32-8. Tampering with public records.
f. (720 ILCS 5/16-30) Sec. 16-30. Identity theft; aggravated identity theft.
g. (720 ILCS 5/16-31) Sec. 16-31. Transmission of personal identifying information.
h. (ILCS 5/17-13) Sec. 17-13. Fraud in transfers of real and personal property.
i. (720 ILCS 5/32-13) Sec. 32-13. Unlawful clouding of title.
j. (5 ILCS 160/11) (from Ch. 116, par. 43.14) Sec. 11. Violation.
k. Identity Theft and Assumption Deterrence Act of 1998.
l. 18 U.S. Code § 484 - Connecting parts of different notes.
m. (815 ILCS 123/) Predatory Loan Prevention Act.
n. 18 U.S. Code § 1028 - Fraud and related activity in connection with identification documents, authentication features, and information.

7

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

o.  Illinois Consumer Fraud and Deceptive Business Practices Act ("Act"), 815 ILCS 505/1, et seq.

p.  Federal Trade Commission Act, ("FTC Act") § 433.2

q.  Federal Truth in Lending Act, 15 U.S.C. §1636(a) Disclosures.

r.  RESPA 12 U.S. Code § 2603 - Uniform settlement statement and disclosures.

s.  18 U.S. Code § 2071 - Concealment, removal, or mutilation generally.

t.  18 U.S. Code § 333 - Mutilation of national bank obligations.

## Verification

Any man or woman having first-hand knowledge of all the facts asserted herein and having absolute power and authority to rebut this affidavit must rebut with the rebutting party's own signature and endorsement notarized, under the penalty of perjury and willing to testify, and executed as true, correct, and complete with positive proof attached. Absent positive proof any rebuttal shall be deemed null and void having no force or effect, thereby waiving any of JPMorgan Chase Bank National Association's Bank immunities or defenses. Any rebuttal shall be mailed to the undersigned address within ten (20) calendar days of JPMorgan Chase Bank National Association's receipt of this affidavit. When a rebuttal is not received by the Affiant within 20 days this entire Affidavit and default provisions shall be deemed true and correct.

This Affidavit of Forgery and Identity Theft is dated the _____12_____ Day of the _July_ Month in the Year of Our Lord Two Thousand Twenty Two July 12, 2022.

Respectively submitted,

By: _Renee A. Washington_

Without prejudice UCC 1-308
Renee A. Washington/Propria Persona
567 Merrill Ave
Calumet City, IL 60409
708-567-3410

8

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

STATE OF Illinois                     )
                                      )          ss
COUNTY OF Cook                        )


## Jurat

On this day came before me the Affiant a living flesh and blood man to oath and attest and affirm the signature is true, complete, and correct on the foregoing affidavit. Renee A. Washington the undersigned, who is personally known by me or upon proper oath and identification, personally came before me, the subscriber, a notary public in and for said County and State, and Duly Affirmed the truth of the foregoing Affidavit in my presence. The Affiant also acknowledged the signing thereof to be his own voluntary act and deed. Signing the within instrument in my presence and for the purpose therein stated.

Signed this day _____12_____, of ___July___, ___2022___ at

_Renee A. Washington_.

My commission expires on: _____

By _Blevian T. Moore_

seal: _____

"OFFICIAL SEAL"
BLEVIAN T. MOORE
Notary Public, State of Illinois
My Commission Expires 07/25/22

FILED DATE: 7/12/2022 2:18 PM   2019CH09659

## PROOF OF SERVICE

The undersigned, Renee A. Washington, hereby certifies that I served a copy of this Affidavit of Forgery and Identity Theft upon the Plaintiff JPMorgan Chase Bank, National Association, by and through its attorneys, Codilis & Associates P.C., and Grant Law LLC via electronic notice through ECF to pleadings@il.cslegal.com and sarah.weber@il.cslegal.com . and ngrant@grantlawllc.com on July 12, 2022.

By: _Renee A. Washington_
Without prejudice UCC 1-308
Renee A. Washington/Propria Persona
567 Merrill Ave
Calumet City, IL 60409
708-567-3410
renee101@sbcglobal.net

E. ILCS Fraud Review

64

liga.gov

# Illinois General Assembly - Illinois Compiled Statutes

11-14 minutes

---

**Illinois Compiled Statutes**

ILCS Listing   Public Acts   Search   Guide   Disclaimer

Information maintained by the Legislative Reference Bureau

Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

```
    (55 ILCS 5/3-5010.5)
    Sec. 3-5010.5. Fraud referral and review.
    (a) Legislative findings. The General Assembly finds that property fraud,
including fraudulent filings intended to cloud or fraudulently transfer title
to property by recording false or altered documents and deeds, is a rapidly
growing problem throughout the State. In order to combat the increase in the
number of these filings, a recorder may establish a process to review and
refer documents suspected to be fraudulent.
    (b) Definitions. The terms "recording" and "filing" are used
interchangeably in this Section.
    (c) Establishment and use of a fraud referral and review process. A
recorder who establishes a fraud referral and review process under the
provisions of this Section may use it to review deeds and instruments and
refer any of them to an administrative law judge for review pursuant to
subsection (g) of this Section that cause the recorder to reasonably believe
that the filing may be fraudulent, unlawfully altered, or intended to
unlawfully cloud or transfer the title of any real property. The recorder may
enter into an intergovernmental agreement with local law enforcement
officials for the purposes of this referral and review. A recorder may
request that the Secretary of the Department of Financial and Professional
Regulation assist in reviewing possible fraudulent filings. Upon request, the
Secretary, or his or her designee, shall assist in identifying the validity
```

of filings. The recorder shall notify the Secretary when a document suspected to be fraudulent is discovered.

In counties with a population of less than 3 million, a recorder shall provide public notice 90 days before the establishment of the fraud referral and review process. The notice shall include a statement of the recorder's intent to create a fraud referral and review process and shall be published in a newspaper of general circulation in the county and, if feasible, posted on the recorder's website and at the recorder's office or offices.

In determining whether to refer a document to an administrative law judge for review, a recorder may take into consideration any of the following factors:

(1) whether the owner of the property or his or her designated representative has reported to the recorder that another individual is attempting or has attempted to record a fraudulent deed or other instrument upon the property;

(2) whether a law enforcement official has contacted the recorder indicating that he or she has probable cause to suspect title or recording fraud;

(3) whether the filer's name has a copyright attached to it or the property owner's name has nonstandard punctuation attached to it;

(4) whether the documents assert fines that do not exist or have no basis under current law or that require payment in gold or silver;

(5) whether the documents are maritime liens, or liens under the Federal Maritime Lien Act or the Preferred Ship Mortgage Act, or not authorized by the United States Coast Guard;

(6) whether the documents are land patents not authorized and certified by the United States Department of the Interior Bureau of Land Management;

(7) whether the documents are representing that the subject of the lien is releasing itself from a lien held by another entity, with no apparent cooperation or authorization provided by the lienholder;

(8) whether the documents are protesting or disputing a foreclosure proceeding that are not filed within the foreclosure suit and with the court presiding over the matter;

(9) whether the documents are Uniform Commercial Code filings referencing birth certificates or other private records that are not in compliance with Section 9-501 of the Uniform Commercial Code;

(10) whether the documents are re-recording deeds to re-notarize or attach notary certification if prior notarization already appears unaltered on the document of record;

(11) whether the documents are asserting diplomatic

credentials or immunity, non-United States citizenship, or independence from the laws of the United States;

(12) whether the documents are claims that a bank cannot hold title after a foreclosure;

(13) whether the documents are deeds not properly signed by the last legal owner of record or his or her court appointed representative or attorney-in-fact under a power of attorney;

(14) whether the documents are manipulated or altered federal or State legal or court forms that release a lien;

(15) whether a document is not related to a valid existing or potential adverse transaction, existing lien, or judgment of a court of competent jurisdiction;

(16) a document that is not related to a valid existing or potential commercial or financial transaction, existing agricultural or other lien, or judgment of a court of competent jurisdiction;

(17) whether the document is filed with the intent to harass or defraud the person identified in the record or any other person;

(18) whether the document is filed with the intent to harass or defraud any member of a governmental office, including, but not limited to, the recorder's office, local government offices, the State of Illinois, or the Federal government; and

(19) whether the documents are previous court determinations, including a previous determination by a court of competent jurisdiction that a particular document is fraudulent, invalid, or forged.

(d) Determinations. If a recorder determines, after review by legal staff and counsel, that a deed or instrument that is recorded in the grantor's index or the grantee's index may be fraudulent, unlawfully altered, or intended to unlawfully cloud or transfer the title of any real property, he or she shall refer the deed or instrument to an administrative law judge for review pursuant to subsection (g) of this Section. The recorder shall record a Notice of Referral in the grantor's index or the grantee's index identifying the document, corresponding document number in question, and the date of referral. The recorder shall also notify the parties set forth in subsection (e) of this Section. The recorder may, at his or her discretion, notify law enforcement officials regarding a filing determined to be fraudulent, unlawfully altered, or intended to unlawfully cloud or transfer the title of any real property.

(e) Notice. The recorder shall use county property tax records to identify and provide notice to the last owner of record by telephone, if available, and certified mail both when: (1) a deed or instrument has been referred for review and determination; and (2) a final determination has been made regarding the deed or instrument. Notice, by mail, shall also be sent to the physical address of the property associated with the deed or instrument.

(f) Administrative decision. The recorder's decision to add a Notice of Referral and refer a document for review is a final administrative decision

that is subject to review by the circuit court of the county where the real property is located under the Administrative Review Law. The standard of review by the circuit court shall be de novo.

(g) Referral and review process. Prior to referral, the recorder shall notify the last owner of record of the document or documents suspected to be fraudulent. The person, entity, or legal representative thereof shall confirm in writing his or her belief that a document or documents are suspected to be fraudulent and may request that the recorder refer the case for review. Upon request, the recorder shall bring a case to its county department of administrative hearings and, within 10 business days after receipt, an administrative law judge shall schedule a hearing to occur no later than 30 days after receiving the referral. The referral and case shall clearly identify the person, persons, or entity believed to be the last true owner of record as the petitioner. Notice of the hearing shall be provided by the administrative law judge to the filer, or the party represented by the filer, of the suspected fraudulent document, the legal representative of the recorder of deeds who referred the case, and the last owner of record, as identified in the referral.

If clear and convincing evidence shows the document in question to be fraudulent, the administrative law judge shall rule the document to be fraudulent and forward the judgment to all the parties identified in this subsection. Upon receiving notice of the judgment of fraud, the recorder shall, within 5 business days, record a new document that includes a copy of the judgment in front of the Notice of Referral that shall clearly state that the document in question has been found to be fraudulent and shall not be considered to affect the chain of title of the property in any way.

If the administrative law judge finds the document to be legitimate, the recorder shall, within 5 business days after receiving notice, record a copy of the judgment.

A decision by an administrative law judge shall not preclude a State's attorney or sheriff from proceeding with a criminal investigation or criminal charges. If a county does not have an administrative law judge that specializes in public records, one shall be appointed within 3 months after the effective date of this amendatory Act of the 98th General Assembly, or the original case shall be forwarded to the proper circuit court with jurisdiction.

Nothing in this Section precludes a private right of action by any party with an interest in the property affected by the review and referral, or the filer of the document or documents suspected to be fraudulent. Nothing in this Section requires a person or entity who may have had a fraudulent document or encumbrance filed against his or her property to use the fraud review and referral process or administrative review created by this Section.

(h) Fees. The recorder shall retain any filing fees associated with filing a deed or instrument that is determined to be fraudulent, unlawfully altered, or intended to unlawfully cloud or transfer the title of any real property under this Section.

(i) Liability. Neither a recorder nor any of his or her employees or agents shall be subject to personal liability by reason of any error or omission in the performance of any duty under this Section, except in case of willful or wanton conduct. Neither the recorder nor any of his or her employees shall incur liability for the referral or review, or failure to refer or review, a document or instrument under this Section.

(j) Applicability. This Section applies only to filings provided to the recorder on and after the effective date of this amendatory Act of the 98th General Assembly.

(k) (Blank).
(Source: P.A. 100-276, eff. 8-22-17.)

F. Affidavit of Attempted Service Wrong Address

FILED DATE: 9/10/2019 4:38 PM   2019CH09659

Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled **Circuit Court of Cook County, Illinois, County Department**
**Chancery Division**

FILED
9/10/2019 4:38 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH09659

JPMorgan Chase Bank, National Association,

Plaintiff,

vs.

Renee A. Washington; Chicago Title Land Trust Company, as
Trustee a/k/a Trust No. 8002361708; Unknown Owners and
Nonrecord Claimants,

Defendant.

Case No.: 2019CH09659

**AFFIDAVIT OF ATTEMPTED
SERVICE**

6519276

I, Ania Skrzydlak, being first duly sworn on oath, depose and say the following:

I am over the age of 18, not a party to this action, and an employee of United Processing, Inc., a licensed private detective
agency, license number 117-001101, appointed by the court to serve process in the above-referenced cause.

I have made each of the following attempts at **304 PRAIRIE AVE , CALUMET CITY, IL 60409** and have been unable to
effect service of the within Mortgage Foreclosure Summons and Complaint to Foreclose Mortgage on Renee A. Washington
for the reason(s) indicated below:

| Date/Time | Remarks |
|-----------|---------|
| 09/09/2019-7:05 PM | 1 level single family home with basement dark brown brick. Older black man in his 70s answered the door and informed me that nobody by the name renee washington lives in the residence and he has no idea who that is. He told me his name is ronaldo washington but that he is of no relation to a Renee Washington. |

Comments/Prev. Attempts: 1 level single family home with basement dark brown brick. Older black man in his 70s answered
the door and informed me that nobody by the name Renee Washington lives in the residence and he has no idea who that is. He
told me his name is Ronaldo Washington but that he is of no relation to a Renee Washington.

Signed and sworn to before me on
this 10 day of September, 20 19.

County of Cook

Notary Public

X _____
Ania Skrzydlak
Investigator
Date Signed: _____
License(s): Agency:117:001101



ASHLEY N SOTO
Official Seal
Notary Public - State of Illinois
My Commission Expires May 22, 2023

United Processing, Inc.
180 North Wabash Suite 615
Chicago, IL 60601
(312) 629-0140
File # 14-19-07590

Fees:
Non-Service       $85.00

**TOTAL:**         **$85.00**

*699901*

G. How To Correct a Previously Recorded Deed

<u>How to correct a previously recorded document, options list, forms online.</u>

Unfortunately, as of Feb 2017, re-recording of instruments are no longer accepted. Because document re-recording has been discontinued, 4 available options to update the recording history are as follows. (Please note that affidavits cannot be e-filed.)

**a)** prepare new or duplicate deed/conveyance instrument*,  or duplicate loan instrument, etc., with all new signatures and all requirements, (*35 ILCS 200/31-45 (d) Deeds or trust documents that, without additional consideration, confirm, correct, modify, or supplement a deed or trust document previously recorded.)

**b)** prepare a simple scrivener's affidavit (with no copy of previously recorded document attached) Note: the scrivener's affidavit is great for simple typos or errors that need to be clarified.

**c)** obtain court order reforming to correct the documents if you are already in court (such as when in probate or foreclosure),

**d)** utilize the new Corrective Recordings process*

*Corrective Recordings process instructions and Affidavit
The basic requirement is that **all the parties to a previously recorded document sign-off*** on any updates, changes or corrections regarding that document, through the use of a corrective affidavit.

The details of the error/correction are noted only in the affidavit instead of on the document itself. If more room is needed, extra pages of explanation may be attached to the affidavit.
The unaltered document with the error is only attached as an exhibit to the affidavit. Note, certified copy or original document may be used with the affidavit.

The Corrective Affidavit can only be signed by the actual parties to the document or those with a power of attorney to do so for the party.  (*Note: If preparing the corrective recording affidavit, if necessary please attach a certified copy of the death certificate in lieu of the person's signature.

The Corrective Recording Affidavit requires all parties to the document sign off to make it clear that all parties are aware of the error and acknowledge the correction. This is best if the parties may disagree at a later date, example - a mortgage that may end up in foreclosure at some future point if problems arise. For this affidavit, both the lender and borrower has to sign.)

1

H. Corrective Deed

## CORRECTIVE RECORDING AFFIDAVIT

THIS FORM IS PROVIDED COMPLIMENTS OF
KAREN A. YARBROUGH, COOK COUNTY CLERK,
AS A COURTESY FORM WHICH MAY BE USED
TO DETAIL A DESIRED CORRECTION TO A
PREVIOUSLY RECORDED DOCUMENT.
CUSTOMER'S MAY USE THEIR OWN AFFIDAVIT
AS WELL, BUT IT MUST INCLUDE ALL OF THE
BELOW REQUIRED INFORMATION. THIS FORM
DOES NOT CONSTITUTE LEGAL ADVICE.

**PREPARER:** _____

THE COOK COUNTY CLERK NO LONGER ACCEPTS RE-RECORDINGS, BUT INSTEAD OFFERS
CORRECTIVE RECORDINGS. DOCUMENTS ATTEMPTING TO UPDATE A PREVIOUSLY RECORDED
DOCUMENT MUST INCLUDE THE FOLLOWING INFORMATION, PLUS A CERTIFIED COPY OR THE ORIGINAL.

I, _____ ,THE AFFIANT, do hereby swear or affirm, that the attached document with the document

number: _____ , which was recorded on: _____ by the Cook County Clerk,

in the State of Illinois, contained the following **ERROR**, which this affidavit seeks to correct:

DETAILED EXPLANATION (INCLUDING PAGE NUMBER(S), LOCATION, PARAGRAPH, ETC.) OF ERROR AND WHAT
THE CORRECTION IS. USE ADDITIONAL SHEET IF MORE SPACE NEEDED FOR EXPLANATION OR SIGNATURES.

_____

_____

Furthermore, I, _____ , THE AFFIANT, do hereby swear or affirm, that this submission includes
a CERTIFIED COPY OR THE ORIGINAL DOCUMENT, and this Corrective Recording Affidavit is being submitted
to correct the aforementioned error. Finally, this correction was approved and/or agreed to by the original GRANTOR(S)
and GRANTEE(S), as evidenced by their notarized signature's below (or on a separate page for multiple signatures).

| | | |
|---|---|---|
| PRINT GRANTOR NAME ABOVE | GRANTOR SIGNATURE ABOVE | DATE AFFIDAVIT EXECUTED |
| PRINT GRANTEE NAME ABOVE | GRANTEE SIGNATURE | DATE AFFIDAVIT EXECUTED |
| GRANTOR/GRANTEE 2 ABOVE | GRANTOR/GRANTEE 2 SIGNATURE | DATE AFFIDAVIT EXECUTED |
| PRINT AFFIANT NAME ABOVE | AFFIANT SIGNATURE ABOVE | DATE AFFIDAVIT EXECUTED |

### NOTARY SECTION TO BE COMPLETED AND FILLED OUT BY WITNESSING NOTARY

STATE: _____ )

) **SS**

COUNTY _____ )

Subscribed and sworn to me this _____ day, of _____ , _____

affix notary stamp here

| | | |
|---|---|---|
| PRINT NOTARY NAME ABOVE | NOTARY SIGNATURE ABOVE | DATE AFFIDAVIT NOTARIZED |

I. Affidavit Scrivener's Instructions

**SCRIVENER'S AFFIDAVIT**
**Prepared By: (Name & Address)**

_____

_____

_____

**Property Identification Number:**

_____

**Document Number to Correct:**

_____

**Attach complete legal description**

I, _____, the affiant and preparer of this Scrivener's Affidavit, whose relationship to

the above-referenced document number is (ex. drafting attorney, closing title company, grantor/grantee, etc.):

_____, do hereby swear and affirm that Document Number:

_____, included the following mistake: _____

_____

_____

which is hereby corrected as follows: (use additional pages as needed), or attach an exhibit which includes the

correction—but **DO NOT ATTACH** the original/certified copy of the originally recorded

document:_____

_____

_____.

Finally, I _____, the affiant, do hereby swear to the above correction, and

believe it to be the true and accurate intention(s) of the parties who drafted and recorded the referenced document.

_____           _____
**Affiant's Signature Above**                                            **Date Affidavit Executed**

**NOTARY SECTION:**

State of _____)
                                            )
County of _____ )

I, _____, a Notary Public for the above-referenced jurisdiction do hereby swear and affirm
that the above-referenced affiant did appear before me on the below indicated date and affix her/his signature or
marking to the foregoing Scrivener's Affidavit after providing me with a government issued identification, and
appearing to be of sound mind and free from any undue coercion or influence.     **AFFIX     NOTARY     STAMP**
**BELOW**
**Notary Public Signature Below     Date Notarized Below**

_____           _____

J. Unlawful Clouding of Title

### Sec. 58-45. Unlawful clouding of title.

(a) Any person who intentionally records or files or causes to be recorded or filed any document in the Office of the Cook County Clerk that is a cloud on the title of land in Cook County, knowing that the theory upon which the purported cloud on title is based is not recognized as a legitimate legal theory by the Courts of the United States, the State of Illinois, or any County within the State of Illinois, commits the offense of unlawful clouding of title.

(b) Any person who commits the offense of unlawful clouding of title shall be fined $5,000.00 for the first offense. Any person who commits this offense a second time shall be fined $7,500.00. Any person who commits this offense a third or subsequent time shall be fined $10,000.00 for each offense.

(c) This Section does not apply to any attorney licensed to practice law in the State of Illinois who, in good faith, files a lien on behalf of his or her client and who, in good faith, believes that the validity of the lien is supported by law or by a good faith argument for an extension, modification, or reversal of existing law relating to the validity of the lien.

(d) For purposes of this Section, the term "cloud on title" or "cloud on the title" means an outstanding claim or encumbrance that, if valid, would affect or impair the title of the owner of an estate in land and on its face has that effect, but can be shown by extrinsic proof to be invalid or inapplicable to that estate.

(Ord. No. 14-0091, 1-15-2014; Ord. No. 20-4415, 12-17-2020 .)

### Sec. 58-46. Unlawful filing of fraudulent lien, judgment or encumbrance against individuals and organizations.

(a) Any person who knowingly or intentionally records or files or causes to be recorded or filed with the Office of the Cook County Clerk any document which alleges to be a judgment, lien or encumbrance against a person or organization, not attached to real property, knowing that the theory upon which the purported lien, judgment or encumbrance is based is not recognized as a legitimate legal theory by the Courts of the United States, the State of Illinois, or any County within the State of Illinois, commits the offense of filing a fraudulent lien or judgment.

(b) Any person who commits the offense of filing of fraudulent judgment, lien or encumbrance shall be fined $5,000.00 for the first offense. Any person who commits this offense a second time shall be fined $7,500.00 or imprisoned for a period not to exceed 30 days or by both such fine and imprisonment. Any person who commits this offense a third or subsequent time shall be fined $10,000.00 or imprisoned for a period not to exceed 60 days or by both such fine and imprisonment for each offense.

(c) This Section does not apply to any attorney licensed to practice law in the State of Illinois who, in good faith, files a lien or judgment or encumbrance on behalf of his or her client and who, in good faith, believes that the validity of the lien is supported by law or by a good faith argument for an extension, modification, or reversal of existing law relating to the validity of the lien or judgment or encumbrance.

(d) For the purposes of this Section, the term "a judgment, lien or encumbrance" means a document setting out a false claim of indebtedness or encumbrance which even if valid would not create a cloud on the title of real property; but is likely to impair the subject of the document in the subject's exercise of commerce, and can be shown by extrinsic proof to be invalid or inapplicable to the subject.

(Ord. No. 14-2921, 5-21-2014; Ord. No. 20-4415, 12-17-2020 .)

Editor's note(s)—Ord. No. 14-2921, adopted May 21, 2014, amended § 58-46Editor's note(s)— in its entirety to read as herein set out. Former § 58-46Editor's note(s)— pertained to administrative adjudication and derived

Created: 2021-04-29 11:09:19 [EST]

from Ord. No. 13-O-11, adopted January 16, 2013. Reader is directed to § 58-80Editor's note(s)— for provisions pertaining to that subject.

K. ILCS Forgery Law

ilga.gov

# Illinois General Assembly - Illinois Compiled Statutes

3-4 minutes

---

### Illinois Compiled Statutes

---

ILCS Listing   Public Acts   Search   Guide   Disclaimer

Information maintained by the Legislative Reference Bureau

Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

```
    (720 ILCS 5/17-3) (from Ch. 38, par. 17-3)
    Sec. 17-3. Forgery.
    (a) A person commits forgery when, with intent to defraud, he or she
knowingly:
        (1) makes a false document or alters any document to
    make it false and that document is apparently capable of defrauding
    another; or
        (2) issues or delivers such document knowing it to
    have been thus made or altered; or
        (3) possesses, with intent to issue or deliver, any
    such document knowing it to have been thus made or altered; or
        (4) unlawfully uses the digital signature, as defined
    in the Financial Institutions Electronic Documents and Digital
    Signature Act, of another; or
        (5) unlawfully creates an electronic signature of
    another person, as that term is defined in the Uniform Electronic
    Transactions Act.
```

(b) (Blank).

(c) A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated. A document includes any record or electronic record as those terms are defined in the Electronic Commerce Security Act. For purposes of this Section, a document also includes a Universal Price Code Label or coin.

(c-5) For purposes of this Section, "false document" or "document that is false" includes, but is not limited to, a document whose contents are false in some material way, or that purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority.

(d) Sentence.

    (1) Except as provided in paragraphs (2) and (3),

forgery is a Class 3 felony.

    (2) Forgery is a Class 4 felony when only one

Universal Price Code Label is forged.

    (3) Forgery is a Class A misdemeanor when an academic

degree or coin is forged.

(e) It is not a violation of this Section if a false academic degree explicitly states "for novelty purposes only".
(Source: P.A. 102-38, eff. 6-25-21.)

L. ILCS Tampering with Public Records Law

# Illinois General Assembly - Illinois Compiled Statutes

5-7 minutes

---

### Illinois Compiled Statutes

---

ILCS Listing   Public Acts   Search   Guide   Disclaimer

Information maintained by the Legislative Reference Bureau

Updating the database of the Illinois Compiled Statutes (ILCS) is an ongoing process. Recent laws may not yet be included in the ILCS database, but they are found on this site as Public Acts soon after they become law. For information concerning the relationship between statutes and Public Acts, refer to the Guide.

Because the statute database is maintained primarily for legislative drafting purposes, statutory changes are sometimes included in the statute database before they take effect. If the source note at the end of a Section of the statutes includes a Public Act that has not yet taken effect, the version of the law that is currently in effect may have already been removed from the database and you should refer to that Public Act to see the changes made to the current law.

```
    (720 ILCS 5/32-8) (from Ch. 38, par. 32-8)
    Sec. 32-8. Tampering with public records.
    (a) A person commits tampering with public records when he or she
knowingly, without lawful authority, and with the intent to defraud any
party, public officer or entity, alters, destroys, defaces, removes or
conceals any public record.
    (b) (Blank).
    (c) A judge, circuit clerk or clerk of court, public official or
employee, court reporter, or other person commits tampering with public
records when he or she knowingly, without lawful authority, and with the
intent to defraud any party, public officer or entity, alters, destroys,
defaces, removes, or conceals any public record received or held by any judge
or by a clerk of any court.
    (c-5) "Public record" expressly includes, but is not limited to, court
records, or documents, evidence, or exhibits filed with the clerk of the
court and which have become a part of the official court record, pertaining
to any civil or criminal proceeding in any court.
    (d) Sentence. A violation of subsection (a) is a Class 4 felony. A
violation of subsection (c) is a Class 3 felony. Any person convicted under
subsection (c) who at the time of the violation was responsible for making,
keeping, storing, or reporting the record for which the tampering occurred:
        (1) shall forfeit his or her public office or public
```

employment, if any, and shall thereafter be ineligible for both State and local public office and public employment in this State for a period of 5 years after completion of any term of probation, conditional discharge, or incarceration in a penitentiary including the period of mandatory supervised release;

(2) shall forfeit all retirement, pension, and other

benefits arising out of public office or public employment as may be determined by the court in accordance with the applicable provisions of the Illinois Pension Code;

(3) shall be subject to termination of any

professional licensure or registration in this State as may be determined by the court in accordance with the provisions of the applicable professional licensing or registration laws;

(4) may be ordered by the court, after a hearing in

accordance with applicable law and in addition to any other penalty or fine imposed by the court, to forfeit to the State an amount equal to any financial gain or the value of any advantage realized by the person as a result of the offense; and

(5) may be ordered by the court, after a hearing in

accordance with applicable law and in addition to any other penalty or fine imposed by the court, to pay restitution to the victim in an amount equal to any financial loss or the value of any advantage lost by the victim as a result of the offense.

For the purposes of this subsection (d), an offense under subsection (c) committed by a person holding public office or public employment shall be rebuttably presumed to relate to or arise out of or in connection with that public office or public employment.

(e) Any party litigant who believes a violation of this Section has occurred may seek the restoration of the court record as provided in the Court Records Restoration Act. Any order of the court denying the restoration of the court record may be appealed as any other civil judgment.

(f) When the sheriff or local law enforcement agency having jurisdiction declines to investigate, or inadequately investigates, the court or any interested party, shall notify the Illinois State Police of a suspected violation of subsection (a) or (c), who shall have the authority to investigate, and may investigate, the same, without regard to whether the local law enforcement agency has requested the Illinois State Police to do so.

(g) If the State's Attorney having jurisdiction declines to prosecute a violation of subsection (a) or (c), the court or interested party shall notify the Attorney General of the refusal. The Attorney General shall, thereafter, have the authority to prosecute, and may prosecute, the violation, without a referral from the State's Attorney.

(h) Prosecution of a violation of subsection (c) shall be commenced within 3 years after the act constituting the violation is discovered or reasonably should have been discovered.
(Source: P.A. 102-538, eff. 8-20-21.)

## **PROOF OF SERVICE**

The undersigned, Renee A. Washington, hereby certifies that I served a copy of this 42 U.S. Code§ 1983 Complaint upon the Plaintiff JPMorgan Chase Bank National Association, Attorneys, Codilis & Associates P.C., Grant Law LLC., via the United States Post Office on August 18, 2022.

By: *Renee A. Wyten*

Without prejudice UCC 1-308
Renee A. Washington/Propria Persona
567 Merrill Ave
Calumet City, IL 60409
708-567-3410
renee101@sbcglobal.net

The undersigned, Renee A. Washington, hereby certifies that I served a copy of this 42 U.S. Codes Complaint upon via the United States Postal by certified mail

State attorney general
100 West Randolph Street
Chicago, IL 60601

Karen A. Yarbrough, Cook County Clerk
118 N. Clark Street, Room 230
Chicago, IL 60602

**Iris Y. Martinez**
Office of the Clerk of the Circuit Court of Cook County
50 W. Washington, Suite 1001
Chicago, Illinois 60602-1305

Timothy C. Evans
Office of the Chief Judge
Circuit Court of Cook County
50 West Washington Street, Room 2600
Richard J. Daley Center
Chicago, IL 60602

Edward N. Robles, Associate Judge

Circuit Court of Cook County
50 West Washington Street
Richard J. Daley Center
Chicago, IL 60602


Lynn Weaver-Boyle, Circuit Judge
Circuit Court of Cook County
50 West Washington Street
Richard J. Daley Center
Chicago, IL 60602

Grant Law LLC
230 W. Monroe Street
Suit 240
Chicago, IL 60409

Codilis & Associates
15W030 North Frontage Road
Burr Ridge, IL 60527

## **PROOF OF SERVICE**

The undersigned, Renee A. Washington, hereby certifies that I served a copy of this 42 U.S. Codes Complaint upon the Plaintiff JPMorgan Chase Bank National Association, Attorneys, Codilis & Associates P.C., Grant Law LLC., via electronic notice through ECF to pleadings@il.cslegal.com, sgrebovic@grantlawllc.com, mgrant@grantlawllc.com on August 18, 2022.

By _Renee A. Wykem_
Without prejudice UCC 1-308
Renee A. Washington/Propria Persona
567 Merrill Ave
Calumet City, IL 60409
708-567-3410
renee101@sbcglobal.net